QUIK 'N TASTY FOODS, INC., Appellant,

v.

DIVISION OF EMPLOYMENT SECURITY, Respondent.

No. WD 57625.

Missouri Court of Appeals, Western District.

May 16, 2000.

Carol Clark, William Martucci, Overland Park, KS, for appellant.

Sharon Willis, Division of Employment Security, Kansas City, for respondent.

RONALD R. HOLLIGER, Judge.

Quik 'N Tasty Foods, Inc. appeals the decision of the Labor and Industrial Relations Commission, awarding unemployment compensation benefits to claimant, Wendy Foley. In its sole point on appeal, Quik 'N Tasty claims the Labor and Industrial Commission erred in deciding the claimant was eligible for unemployment benefits on a finding that she quit her job voluntarily with good cause attributable to her work or to her employer. We reverse the decision and remand the case to the Commission.

Wendy Foley was employed by Quik 'N Tasty as a machine operator for more than three years. At the end of the work day on March 24, 1999, Ms. Foley was called to the office of her employer. She had previously been told by a co-worker that her attendance record was being reviewed. She believed she was being called to the office that day to be reprimanded for excessive absenteeism. She testified that she did not go to the office voluntarily and that she had not planned to resign from her job that day. At the conclusion of the meeting, however, Ms. Foley resigned.

On March 29, 1999, Ms. Foley applied for unemployment benefits with the Division of Employment Security. On April 19, 1999, a deputy with the Division issued a determination that Ms. Foley was disqualified for benefits because she left her work voluntarily without good cause attributable to her work or employer.[1] Ms. Foley filed her appeal and a hearing was held before an Appeals Referee on May 13, 1999. The referee concluded that Ms. Foley left her work voluntarily because she felt she would be discharged and she did not want a discharge on her employment record; that there was no specific evidence from which it could be reasonably inferred that the claimant was told she would be discharged if absent on March 29; that the evidence only showed that the claimant was told she needed to find someone else to take her children to the dentist that day; and that the employer only suggested that perhaps it would look better for her if she resigned. The Tribunal concluded that the employer did not advise Ms. Foley she had to leave work voluntarily or be discharged, and further concluded that Ms. Foley's decision to leave her work voluntarily was unreasonable, not in good faith, and without good cause attributable to the

1. Section 288.050 RSMo Supp.1997 provides, in part, for disqualification from benefits until wages have been earned equaling ten times the weekly benefit if the claimant "has left work voluntarily without good cause attributable to such work or to the claimant's employer."

work or to the employer. The Appeals Referee, therefore, held Ms. Foley to be disqualified for unemployment benefits until she earned wages equal to ten times her weekly benefit.

Ms. Foley then appealed the Tribunal's decision to the Labor and Industrial Commission, which reversed the decision of the Tribunal and found that Ms. Foley's actions were reasonable, her resignation was in good faith, and that she was, therefore, not disqualified from benefits.

Quik 'N Tasty now appeals the decision of the Commission.

Ms. Foley testified before the Appeals Referee that she had recently been under stress due to personal problems and that she had been absent from work for personal reasons, including illnesses and bad weather. Present in the office on March 24, 1999, when Ms. Foley arrived, were her immediate supervisor (her team leader, Tina James), two other team leaders, and in an office nearby was the manufacturing plant manager. The office door was closed. Ms. James testified that Ms. Foley was called to the meeting to be issued a "redirect" regarding her attendance problems. A "redirect" is a verbal warning, the first step in progressive discipline. Ms. Foley testified that she did not recall that occurring. There is no evidence that Ms. Foley was aware of the progressive discipline procedures Quik 'N Tasty had in place. During the meeting, Ms. Foley's supervisor informed her that she had heard rumors that Ms. Foley was looking for another job and that it would be easier on both of them if she were honest about it. Ms. Foley became upset and began to cry. She advised Ms. James that she was under a lot of stress and was worried about being fired, and that she required time off the following Monday, March 29, 1999, to take her children to the dentist. Ms. Foley was told that her absence on Monday would be unacceptable, and that she needed to find someone else to take her children to the dentist. Ms. Foley did not feel anyone else could go in her stead because her son was expected to require a root canal, and her daughter was afraid of doctors.

It was also suggested by her supervisor in the meeting that Ms. Foley consider resigning, because a resignation would look better on her employment record than would a discharge. Ms. James suggested she and Ms. Foley go together to see the personnel manager to determine what severance benefits would be available. The personnel manager provided Ms. Foley with a resignation form, which she completed and signed. It indicated that her last day of work would be two days later, on March 26, 1999. In the section requesting the employee's reason for quitting, Ms. Foley wrote "personal," as suggested by the personnel manager. She returned later that day and changed it to read "distance & transportation & day care duress."

Ms. Foley admits she was not told she would be discharged if she did not resign, nor was she told she would be discharged if she failed to report to work the following Monday. Nonetheless, she claimed she was placed under duress and coerced into resigning by her employer during the meeting because she was being advised that her absence on March 29 would be unacceptable and she was in fear of being discharged if she did not report to work that day.

Quik 'N Tasty contends that the Commission erred in finding that Ms. Foley quit her job voluntarily with good cause attributable to her work or to her employer. It claims the findings of the Commission were not supported by sufficient and competent evidence.

## Standard of Review

Our review of the Commission's decision is governed by Section 288.210, RSMo Supp.1995, which provides, in pertinent part:

... The findings of the commission as to the facts, if supported by competent and

substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

■ We are not bound, however, by the Commission's conclusions of law or the Commission's application of law to the facts. *Bunch v. Div. of Employment Sec.,* 965 S.W.2d 874, 877 (Mo.App.1998), *Div. of Employment Sec. v. Taney County Dist. R–III,* 922 S.W.2d 391, 393 (Mo.1996).

In *Davis v. Research Med. Ctr.,* 903 S.W.2d 557, 571 (Mo.App.1995), we outlined the process for review of an award made by the Commission in worker's compensation decisions where, as here, the Commission has, without hearing evidence itself, reversed the decision of a workers' compensation administrative law judge. In *Travelers Equities Sales, Inc. v. Div. of Employment Sec.,* 927 S.W.2d 912, 917 (Mo.App.1996), we held that the *Davis* standard was applicable to employment security decisions as well. *Davis* held that review is a two-step process. First, an appellate court must determine whether the whole record, viewed in the light most favorable to the decision, contains sufficient competent and substantial evidence to support the Commission's decision. *Davis,* 903 S.W.2d at 571. If it does, the court, in the second step, makes a determination as to whether the decision is against the overwhelming weight of the evidence.

*Id.* In this second step, the reviewing court considers all of the evidence in the record, including that not favorable to the decision. *Id.*

■ The Commission's determination of whether an employee voluntarily left her employment or was discharged is a factual determination, and we will defer to the Commission as to its finding that the claimant left her employment voluntarily. *Sokol v. Labor & Indus. Relations Comm'n,* 946 S.W.2d 20, 24 (Mo.App.1997). However, the question of whether the claimant had good cause to leave her employment is a legal issue and thus we do not defer to the Commission's determination on the matter. *Id.* at 26.

The Commission argues that Ms. Foley quit in lieu of certain discharge; that she had no choice. The Commission says it could be argued that Ms. Foley's action in resigning was not a freewill, volitional act on her part because of the threat of imminent discharge. The Commission says this is a case of first impression; that there is no decision on whether the threat of imminent discharge constitutes good cause to voluntarily leave work.[2] Quik 'N Tasty counters that the decision, if upheld, would constitute the extension of unemployment benefits to those who were "constructively discharged."

Neither the commission nor Quik 'N Tasty is entirely correct. In *Missouri Division of Employment Security v. Labor and Industrial Relations Comm'n,* 739 S.W.2d 747 (Mo.App. W.D.1987), this court held that an employee who quit his employment in anticipation of a plant layoff had not left involuntarily and was therefore disqualified from benefits. The court did conceptually acknowledge that under some circumstances a quit or resignation from employment might not be voluntary. There is other authority for the principle that a resignation may, in fact, be considered involuntary and therefore a dis-

---

2. The Commission argues the issue was present in *Tin Man Enterprises, Inc. v. Labor &*

*Industrial Relations Comm.,* 866 S.W.2d 147 (Mo.App.1993) but was not reached.

charge. In *Davis v. Labor and Industrial Relations Comm'n*, 554 S.W.2d 541 (Mo. App. E.D.1977), the court acknowledged the principle that under a "pressure of the circumstances" test a resignation could be found nevertheless to be a "discharge" for purposes of unemployment compensation; the court rejected the employee's argument for application of the rule in that case because there was substantial evidence to support the commission's finding that he had not been "discharged." 554 S.W.2d at 543.

The "pressure of the circumstances" test apparently first emerged in Missouri case law in *Kilgore v. Industrial Commission*, 337 S.W.2d 91 (Mo.App. S.D.1960).

> "We agree with respondent that the mere fact that an employer leaves his job does not necessarily mean that the act is voluntary. Extraneous factors and surrounding circumstances must be taken into account and where pressure of circumstances compels termination by the employee, then the termination is involuntary." *Id.* at 99.

Nevertheless, the court found that the claimant had not satisfactorily proved such pressure. The principle stated in *Kilgore* was later cited approvingly by the Supreme Court in *Medical West Building Corp. v. E. L. Zoernig and Co.*, 440 S.W.2d 744, 748 (Mo.1969). Although not applied in an unemployment benefits context, the Court said, "[A]n employer may by its conduct either directly or indirectly force an employee to resign, without his resignation being voluntary." The principle was acknowledged again in *Clark v. Labor and Industrial Relations Comm'n*, 549 S.W.2d 573, 574 (Mo.App. E.D.1977). *See also McDonnell Douglas Corp. v. Labor and Industrial Relations Comm'n*, 592 S.W.2d 295 (Mo.App.1979) (whether resignation from employment is voluntary or involun-

tary is determined by whether employee directly or indirectly exercised a free will choice).[3]

The determination of whether an employee quits or is discharged is a factual one to which we would give great deference. *Sokol, supra.* We would be required to review, however, whether the law as applied to the facts would permit an award under such facts. We need not do so in this case because there was no factual finding by the Commission that Ms. Foley was constructively discharged or that she was acting under such duress that her resignation was not voluntary. To the contrary, the Appeals Referee and Commission both found that she voluntarily quit.

A claimant is not entitled to unemployment benefits if she voluntarily quits her job absent good cause attributable to her work or to her employer. *Wingo v. Pediatric and Adolescent Med. Consultants, Inc.*, 932 S.W.2d 898, 899 (Mo.App.1996). It is the claimant who bears the burden of proving that her voluntary termination resulted from good cause attributable to her work or employer. *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. 1993), *O'Dell v. Div. of Employment Sec.*, 376 S.W.2d 137 (Mo.1964). In determining whether Ms. Foley met this burden, we are guided by Section 288.020, RSMo 1993, which directs that the unemployment security law be liberally construed so as to further the public policy of Missouri in setting aside unemployment reserves to benefit persons unemployed through no fault of their own. *Sokol*, 946 S.W.2d at 23. Section 288.050 provides that where an employee voluntarily quits her job, she must have good cause attributable to her work or employer to qualify for employ-

---

3. Claims of involuntary separation have also arisen in other factual circumstances such as (a) mandatory retirement, (b) leave of absence, (c) job ceasing to exist, (d) employee illness, (e) non-renewal of employment contract and others. *See Board of Education v.* *Labor and Industrial Relations Comm'n*, 633 S.W.2d 126 (Mo.App.1982), for a discussion of those types of cases. *See also Wimberly v. Labor and Industrial Relations Comm'n*, 688 S.W.2d 344 (Mo. banc 1985) dealing with whether pregnancy is "voluntary."

**626**

ment compensation benefits. The disqualifying provisions of Section 288.050 are strictly and narrowly construed in favor of finding an employee is entitled to compensation. *Id.* The legislative purpose of this statute is to create an incentive for persons who are employed to remain employed by withholding benefits from those who quit their job without good cause. *Hessler*, 851 S.W.2d at 518.

■ "Good cause" for purposes of determining eligibility for unemployment benefits has no fixed or precise meaning, and is judged by the facts of each case. *Sokol*, 946 S.W.2d at 24. "Good cause" has been interpreted to mean "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Hessler*, 851 S.W.2d at 518, quoting *Belle State Bank v. Indus. Comm'n*, 547 S.W.2d 841, 846 (Mo.App.1977). Conditions which motivate the employee to voluntarily leave "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Id.* The determination of good cause is a question of law, and there are two elements of good cause—reasonableness and good faith. *Bunch*, 965 S.W.2d at 878.

Ordinarily, our inquiry would focus on whether the employee's action in voluntarily terminating her employment was reasonable and whether the employee acted in good faith. Although the Commission argues that Ms. Foley acted reasonably and in good faith, we need not reach those issues and it would confuse the analysis to do so. We do not disagree that Ms. Foley's actions, subjectively measured, were reasonable from her point of view.

■ The good cause necessary to support an award of unemployment benefits where an employee voluntarily quits must be *cause attributable to her work or her employment*. An employee who voluntarily terminates may avoid the immediate benefit disqualification of Section 288.050 if the cause is attributable to her employer.

*O'Dell*, 376 S.W.2d at 142. Whether the cause is so attributable involves the application of the law to the facts; that, therefore, is a question of law which we review independently of the Commission's determination. *Travelers, supra.* We agree with the conclusion in *Hessler* that the phrase "attributable to his work or to his employer" means "that it must be the work or employer himself that creates the condition making it unreasonable to expect this employee to continue work." *Hessler*, 851 S.W.2d at 518.

■ The Commission makes no argument that any condition created by the employer, other than the suggestion to resign rather than be discharged, may itself wholly constitute "good cause" sufficient for the exception from benefit disqualification; nor do we believe that the prospective denial of a day off alone constitutes good cause. We do not consider whether such employer actions, if coupled with an already existing employer-created condition, might constitute good cause or a non-disqualifying voluntary termination because there is no such condition present here. The Commission award, therefore, erroneously applied the law.

We, therefore, reverse the Commission's decision that Wendy Foley left her job voluntarily with good cause attributable to her work or to her employer. We remand to the Commission to enter an order consistent with this opinion.

EDWIN H. SMITH, Presiding Judge, and VICTOR C. HOWARD, Judge, concur.