### Paula BAKER, Appellant,

v.

### MIDWAY ENTERPRISES, INC., and Division of Employment Security, Respondents.

#### No. WD 60214.

Missouri Court of Appeals, Western District.

May 7, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 2, 2002.

---

Angela L. Peterson, Columbia, for Appellant.

Sharon A. Willis, Kansas City, Ninion S. Riley, Jefferson City, for Respondents.

Before LISA WHITE HARDWICK, Presiding Judge, JOSEPH M. ELLIS, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Appellant Paula Baker appeals from an order issued by the Labor and Industrial Relations Commission denying her application for unemployment benefits pursuant to § 288.050[1] based upon a finding that she had left her employment with Midway Enterprises, Inc. ("Midway Enterprises") voluntarily and without good cause attributable to her work or her employer.

Appellant is a single mother with two children who are ten and eleven-years-old. Prior to March 30, 2001, Appellant worked full-time for the Central Missouri Coun-

---

1. All statutory references are to RSMo 2000 unless otherwise noted.

ties' Human Development Corporation ("HDC").

In late November 2000, Appellant also began working part-time for Midway Enterprises at a truck stop restaurant, waiting tables on Saturdays from 6:00 a.m. to 2:00 p.m. to make extra money for Christmas. Appellant subsequently agreed to continue working her Saturday shift until her manager could find a replacement.

In early March 2001, after she discovered that she was going to soon be laid off from her full-time job at H.D.C., Appellant asked her manager at Midway if she could obtain full-time employment there. Appellant's manager informed her that the only hours available were for night and weekend shifts. Appellant elected not to accept those additional hours because the cost of obtaining child-care for her two children for nights and weekends would be too high. Appellant informed her manager that she would be quitting her job as of the last Saturday in March.

On March 30, 2001, Appellant was laid off her full-time job with H.D.C. Her last day of work for Midway Enterprises at the truck stop was March 31, 2001.

On April 2, 2001, Appellant filed a claim for unemployment benefits. Shortly thereafter, Midway Enterprises filed a letter of protest to Appellant's claim based on the fact that Appellant had voluntarily quit her job at the truck stop. On April 18, 2001, a deputy with the Missouri Department of Employment Security issued his determination denying Appellant's claim for unemployment benefits under § 288.050 based upon the fact that she had left her employment at the truck stop for personal reasons related to child-care expenses.

Appellant appealed the Deputy's determination to the Appeals Board. A hearing was conducted on Appellant's claim on May 9, 2001. Appellant was the only one to offer testimony at the hearing, and no employer participated in the hearing. On May 14, 2001, the Appeals Tribunal issued its decision denying benefits to Appellant. The Appeals Tribunal found that Appellant had left her employment at the truck stop "for personal reasons triggered by the lay off at her regular full-time job." Because her reasons for leaving were not connected to Midway Enterprises, the Appeals Tribunal held that Appellant had left her employment without good cause attributable to her employer and that she was disqualified from receiving any unemployment benefits pursuant to § 288.050.1.

Appellant appealed the decision of the Appeals Tribunal to the Labor and Industrial Relations Commission ("the Commission"). On June 12, 2001, the Commission affirmed the decision of the Appeals Tribunal and adopted that opinion as its own. Appellant brings two points on appeal from that decision.

 Our review of the Commission's decision is governed by Section 288.210 which provides, in relevant part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*Quik 'N Tasty Foods, Inc. v. Division of Employment Sec.,* 17 S.W.3d 620, 623–24 (Mo.App. W.D.2000) (quoting § 288.210).

In her first point, Appellant contends that the Commission erred in finding that she voluntarily left her employment with Midway Enterprises without good cause attributable to her employer because the findings of fact made by the Commission did not support that decision and because there was insufficient competent evidence in the record to deny her benefits under § 288.050. Appellant claims that she should not have been denied benefits because the record and the Commission's findings establish that she had good cause for terminating her employment with Midway Enterprises.

■ We defer to the Commission's factual findings related to why Appellant terminated her employment if the record contains sufficient evidence to support the Commission's findings. *Id.* at 624. The Commission found that Appellant voluntarily quit her job at the truck stop for personal reasons related to child-care triggered by being laid off by H.D.C. Appellant does not dispute this finding which is clearly supported by the record.[2] Instead, Appellant contends that her decision to quit employment based upon child-care considerations constituted good cause for voluntarily terminating her employment and that, therefore, she should not have been disqualified from benefits.

■ "In a case in which an employee voluntarily quits his or her job, § 288.050.1(1), RSMo 2000, makes good cause a condition precedent to receiving immediate unemployment compensation benefits." *Baby–Tenda Corp. v. Hedrick,* 50 S.W.3d 369, 374 (Mo.App. W.D.2001). That section provides:

Notwithstanding the other provisions of this law, a claimant shall be disqualified for ... benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]

*§ 288.050.1(1).*

■ The claimant bears the burden of proving the existence of good cause. *Department of Natural Res. Parks & Recreation v. Lossos,* 960 S.W.2d 537, 540 (Mo.App.S.D.1998). "The good cause necessary to support an award of unemployment benefits where an employee voluntarily quits must be *cause attributable to her work or her employment.*" *Quik 'N Tasty Foods, Inc.,* 17 S.W.3d at 626 (emphasis in original). "'[A]ttributable to his work or to his employer' means 'that it must be the work or the employer himself that creates the condition making it unreasonable to expect this employee to continue work.'" *Id.* (quoting *Hessler v. Labor & Indus. Relations Comm'n,* 851 S.W.2d 516, 518

**2.** Appellant also attempts to argue that she had good cause for quitting attributable to her employer because Midway Enterprises failed to pay her more money and failed to give her better hours. The Commission did not find that these were reasons for her voluntary terminating, and we must defer to the factual findings of the Commission on this issue. In any event, these asserted reasons for termination her employment would not constitute good cause attributable to Midway Enterprises. Similarly, Appellant's argument that Midway Enterprises caused her to voluntarily terminate her employment by not finding a replacement for her sooner makes no logical sense and has no merit.

(Mo. banc 1993)). "Whether the cause is so attributable involves the application of the law to the facts; that, therefore, is a question of law which we review independently of the Commission's determination." *Id.*

 Appellant contends that *Placzek v. Division of Employment Security*, 49 S.W.3d 717 (Mo.App. S.D.2001), establishes that her decision to quit employment based upon child-care considerations constituted good cause for voluntarily terminating her employment and that, therefore, she should not have been disqualified from benefits. However, *Placzek* involved whether a claimant should be denied benefits for turning down an offer of employment under § 288.050.1(3). In order to avoid disqualification under that subsection, a claimant is only required to have good cause for failing to seek employment or for turning down an offer of employment, without regard to the source of that cause. *§ 288.050.1(3).*

In contrast, in order to avoid disqualification from benefits under § 288.050.1(1), a claimant must establish that the reason for voluntarily quitting employment was due to good cause "attributable to such work or to the claimant's employer." *§ 288.050.1(1).* Indeed, in the case at bar, the Commission did not make a finding that Appellant lacked good cause for quitting and relied solely on the fact that the cause of her voluntary termination was not causally connected to her employment with Midway Enterprises. Accordingly, *Placzek* does not aid Appellant in this appeal.

 Appellant fails to indicate how her need for child-care could be deemed attributable to Midway Enterprises. An employee that voluntarily terminates his or her employment due to parental obligations is deemed to have left work without good cause attributable to the employer because the employee's reasons for leaving lack the causal connection to the employer or the employment which is required by § 288.050.1(1). *Fin–Clair Corp. v. Lashea*, 30 S.W.3d 237, 241 (Mo.App. E.D.2000); *Lyell v. Labor & Indus. Relations Comm'n*, 553 S.W.2d 899, 901 (Mo. App. S.D.1977). Accordingly, the Commission did not err in finding that Appellant's reasons for voluntarily terminating her employment were not attributable to Midway Enterprises. Point denied.

 In her second point, Appellant claims that the Commission erroneously failed to consider the fact that she had been laid-off from her full-time employment with H.D.C. the day before her part-time employment ended at the truck stop. Appellant argues that she should be entitled to benefits based upon the loss of her full-time job. In response, the Division of Employment Security ("the Division") argues that the voluntary termination of any employment without good cause attributable to the employer should lead to disqualification from any and all benefits under § 288.050.1(1).

As noted by both Appellant and Respondent, *Smith v. Labor & Industrial Relations Commission*, 869 S.W.2d 101 (Mo. App. W.D.1993), is directly on point. In *Smith*, Mr. Smith was concurrently employed at a full-time job with Tom's Quality Food and a part-time job with Sharla Management Company doing telemarketing from home. *Id.* at 102. Mr. Smith was discharged from his full-time position with Tom's Quality Food, and later, voluntarily quit his part-time job for personal reasons. *Id.* at 103. Mr. Smith applied for unemployment benefits, and the Commission denied claimant any unemployment benefits based upon its finding that he had voluntarily quit his part-time job and was, therefore, disqualified from any benefits under § 288.050.1(1). *Id.* On Ap-

peal, the claimant argued that the Commission improperly erred in disqualifying him from all benefits based upon his voluntary termination from his part-time job. *Id.* In reversing the Commission's decision, we stated:

> [W]ithin the specific context of the case at bar, Smith's departure from Sharla Management Company, which was voluntary for purposes of section 288.050.1(1), does not disqualify Smith for benefits *to which he might otherwise be entitled* as a result of his termination from Tom's Quality Food. However, there still remains the question of whether there are any other reasons to disqualify Smith for such benefits. For example, the Commission left unresolved the issue of whether Smith's termination from Tom's Quality Food was involuntary for purposes of section 288.050.1(1).
>
> We note that a situation ... similar to the case at bar was presented to the Minnesota Supreme Court in *Sticka v. Holiday Village South,* 348 N.W.2d 761 (Minn.1984). In that case, as in the case at bar, the claimant ceased part-time employment following her termination from full-time employment. The court found that, although the evidence established that the claimant had voluntarily terminated her part-time employment, the issue of her eligibility for benefits from her full-time employer had been left unresolved. *Sticka,* 348 N.W.2d at 763. Consequently, the court remanded the matter for a determination of the claimant's possible eligibility with respect to the full-time employer. *Id.*
>
> Accordingly, the case at bar is remanded for a determination of Smith's right to receive benefits based upon his termination from Tom's Quality Food (if that question has not already been decided), and to compute the benefits, if any, to which Smith is entitled.

*Id.* at 104 (emphasis in original).

While the Division concedes that "the decision in *Smith* would appear to decide the issue herein," it contends that *Smith* is no longer in keeping with the spirit and intent of the Employment Security Law "as well as changes in the general climate of the labor market in the United States" and asks this court to overrule our prior decision. The Division's arguments are wholly unpersuasive.

While the Division claims that changes in the Employment Security Law merit new consideration of this issue, it fails to point to any new statutory language that would call *Smith* into question. "The legislature is presumed to be aware of existing declarations of law when it enacts statutes pertaining to the same subject." *Benoit v. Missouri Highway & Transp. Comm'n,* 33 S.W.3d 663, 676 (Mo. App. S.D.2000). The fact that changes have generally been made to the Employment Security Law since 1993 that have no direct relation to the issue in the case at bar does not prompt this court to readdress the issue.

Likewise, the Division's unsupported assertions about the state of the current labor market and changes that have occurred therein subsequent to *Smith* do not give rise to any compelling reason to readdress this issue. We are equally unmoved by the Division's contention that our treatment of the Employment Security law should be "ever-evolving" "adjusting as necessary to stay in touch with the current trends and problems that might occur in a fluctuating labor market." Such an approach would clearly be contrary to a legal system that is based upon precedent.

In accordance with *Smith,* the Commission's decision is reversed and the cause is

remanded for a determination of whether Appellant is entitled to any benefits based upon her termination from H.D.C., whether any such benefits should be full or partial, and to calculate the amount of any benefits to which Appellant is entitled.

All concur.