Delydia MILLER, Appellant,

v.

HELP AT HOME, INC., Defendant,

and

Division of Employment Security, Respondent.

No. WD 64918.

Missouri Court of Appeals, Western District.

Feb. 7, 2006.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 28, 2006.

Samuel I. McHenry, Kansas City, MO, for appellant.

Larry R. Ruhmann, St. Louis, MO, Marilyn G. Green, Jefferson City, MO, for respondent.

Before EDWIN H. SMITH, C.J., and ULRICH and HARDWICK, JJ.

EDWIN H. SMITH, Chief Judge.

Delydia Miller appeals the decision of the Labor and Industrial Relations Commission (Commission) disqualifying her, pursuant to § 288.050, RSMo, Supp.2005,[1] from receiving immediate unemployment compensation benefits, on the basis that she left work voluntarily without good cause attributable to her work or employer, the respondent, Help at Home, Inc. (HHI).

The appellant raises two points on appeal. In Point I, she attacks the Commission's finding that she did not have good cause to voluntarily leave or quit her employment with HHI. In Point II, she attacks the Commission's finding that she quit her employment, rather than being terminated by HHI. Specifically, in Point I, she claims that the Commission erred in disqualifying her from receiving immediate unemployment compensation benefits, pursuant to § 288.050, based upon its finding that she voluntarily left her employment with HHI without good cause, because the facts found by the Commission and the record do not support a finding that she did not have good cause for leaving her employment. In Point II, she claims that the Commission erred in disqualifying her from receiving immediate unemployment compensation benefits, based upon its finding that she voluntarily left her employment, because the facts found by the Commission and the record do not support a

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

finding that she quit her employment with HHI.

We affirm.

## Facts

In March of 2004, HHI hired the appellant to provide in-home care for disabled and elderly clients. At the time of the appellant's employment, she was assigned to work thirty hours per week, six hours per day, at $7.80 per hour. Her immediate supervisor was Linda Bramell.

At the beginning of June, 2004, Bramell notified the appellant that her hours were being cut from thirty hours a week to fifteen for a period of two weeks. This temporary reduction resulted from the fact that the niece, Diane Britt, of the client to whom the appellant was then assigned, Ida Britt, was having surgery and would be off work for two weeks recovering, allowing her to care for her aunt for that period of time during the day, so that the appellant would only be needed three hours per day. After being notified of this temporary reduction in hours, the appellant resigned in writing. Her resignation was dated June 4, 2004, and was given to Bramell on June 9, 2004, and accepted. In her resignation, she gave a two-week notice.

On June 11, 2004, the appellant had a conversation with Ms. Britt's niece, Diane Britt, who asked her not to leave. Based on that conversation, the appellant had a change of heart and decided she wanted to return to work.

On June 16, 2004, Bramell received information from the Family Care Safety Registry, § 210.903, which led her to believe that the appellant was, at least temporarily, disqualified from providing care to the elderly. On that same day, Bramell and appellant had a meeting, during which the appellant requested to rescind her resignation, which was denied. Bramell advised the appellant during the meeting about the information she had received from the Family Care Safety Registry requiring HHI to accelerate her resignation, making it effective immediately.

On June 17, 2004, the appellant filed her initial claim for benefits, which was protested by HHI. Her claim was denied by a deputy of the Division of Employment Security, who determined that she was "disqualified from 6/16/04 because the claimant left work with [HHI] voluntarily without good cause attributable to her work or employer on 6/16/04." On July 15, 2004, the appellant filed a timely appeal from the decision of the Deputy. Her appeal was heard, by teleconference, on August 3, 2004. A referee of the Appeals Tribunal affirmed the Deputy's decision. The appellant sought review of the Referee's decision by the Commission. On November 18, 2004, the Commission entered its order affirming and adopting the decision of the Appeals Tribunal.

This appeal follows.

## Standard of Review

■ Our review of the Commission's decision denying benefits to the appellant is governed by § 288.210, which reads, in pertinent part:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Thus, we will affirm the Commission's decision if upon review of the whole record, we find that there is substantial and competent evidence to support it. *Higgins v. Mo. Div. of Employment Sec.*, 167 S.W.3d 275, 279 (Mo.App.2005) (*citing Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 223 (Mo. *banc* 2003)).

■■■ A factual determination is not supported by competent and substantial evidence if it is against the weight of the evidence. *Hampton,* 121 S.W.3d at 223. A factual determination by the Commission will be disturbed on appeal, on the basis that it is against the weight of the evidence, only when there is a firm belief that the judgment is wrong. *Morgan v. McBee,* 174 S.W.3d 640, 643 (Mo.App. 2005).

## I.

In Point I, the appellant claims that the Commission erred in disqualifying her from receiving immediate unemployment compensation benefits, pursuant to § 288.050, based upon its finding that she voluntarily left her employment with HHI without good cause, because the facts found by the Commission and the record do not support a finding that she did not have good cause for leaving her employment. In Point II, she claims that the Commission erred in disqualifying her from receiving immediate unemployment compensation benefits, based upon a finding that she voluntarily left her employment, because the facts found by the Commission and the record do not support a finding that she quit her employment with HHI. Because Point I is only relevant to the extent that the appellant actually voluntarily left her employment with HHI, we will address Point II first. If, after addressing Point II, we determine that the Commission did not err in finding that she quit her employment with HHI, we will move to Point I to determine whether she quit with good cause.

■■■ The Commission's determination of whether an employee voluntarily left his employment or was discharged is a factual determination. *Quik 'N Tasty Foods, Inc. v. Div. of Employment Sec.,* 17 S.W.3d 620, 624 (Mo.App.2000). Hence, we will review such a determination to see if there is competent and substantial evidence to support it. Our review then in this point is to determine whether the Commission's finding, that the appellant quit her employment with HHI, is supported by competent and substantial evidence. If there is conflicting evidence as to a factual issue, the resolution of that conflict is for the Commission. *Worley v. Div. of Employment Sec.,* 978 S.W.2d 480, 483 (Mo.App.1998).

The Commission, adopting the Appeals Tribunal's findings, found that:

On or about June 4 the employer temporarily reduced the claimant's work hours to 15 hours per week. The claimant tendered her written resignation on June 9, expressly declaring it was her two-week notice. She testified that she resigned when she did because she needed more work hours and more pay. She did not, however, have other employment arranged with a new employer. The employer accepted the claimant's resignation as tendered. The claimant last worked her scheduled work hours on June 16. The employer notified her that she did not need to work the remainder of her two-week notice time.

From these facts, the Commission, adopting the Appeals Tribunal conclusions, con-

cluded that the claimant "left her work voluntarily ... after her last workday on June 16, 2004." Thus, on appeal, the issue is whether this conclusion is supported by substantial and competent evidence.

Section 288.050 governs whether an employee is qualified for immediate receipt of unemployment compensation benefits, and provides, in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer....

§ 288.050.1(1). Thus, in accordance with § 288.050, an employee is not entitled to immediate benefits if he voluntarily left his employment without good cause. *Taylor v. Div. of Employment Sec.*, 153 S.W.3d 878, 881 (Mo.App.2005). The claimant has the burden of proof with respect to eligibility for benefits. *Id.* Thus, if the receipt of benefits is challenged by the employer, for the employee's voluntarily leaving employment without good cause, the employee has the burden of showing that either he did not leave employment voluntarily, or, that if he did, he did so with good cause. *Id.*

The appellant claims in this point that the facts found by the Commission and the record do not support the Commission's decision that she quit her employment with HHI on June 16, 2004. Rather, she contends that the record would only support the fact she was effectively terminated. Specifically, she contends that after the submission and acceptance of her res-

ignation by HHI, she was allowed to rescind it such that it did not constitute a quit for purposes of receiving unemployment compensation benefits, pursuant to § 288.050.

An employee is deemed to have left work voluntarily when he leaves of his own accord, as opposed to being discharged, dismissed, or subjected to layoff by the employer. *Worley*, 978 S.W.2d at 483. "While the terms that the parties use to describe cessation of an employee's employment may be instructive, the relevant facts and circumstances are controlling." *Id.* Here, the parties agree that the appellant resigned from her employment with HHI, because "she needed more hours and she needed—wasn't making enough money," in a written resignation, dated June 4, 2004, which reads: "At this time I am putting in my two week resignation. I appreciate being here and I thank you very much."

"Generally, a resignation prospective or conditional in character may be withdrawn at any time before it is accepted." *Holt v. Pers. Advisory Bd. of State*, 679 S.W.2d 340, 343 (Mo.App.1984) (citation omitted). According to the testimony of Bramell, the appellant's supervisor, the appellant's resignation was submitted to her on June 9, 2004, and was accepted. That fact alone was sufficient for the Commission to find that the appellant voluntarily left her employment with HHI. *Worley*, 978 S.W.2d at 483. However, the appellant contends in her brief that, in effect, she was allowed by HHI to rescind her resignation in that, after submitting her resignation, she had a change of heart and "told the employer that she intended to continue her work (at her supervisor's request) and was in fact only sent home due to a factor outside the control of either of the parties." The "factor" to which she

refs is the receipt of a notice by HHI on June 16, 2004, that the appellant's name had been placed on the "family care registry ... basically disqualify[ing her] from working until things were resolved" by a waiver. This resulted in the appellant's resignation being accelerated by HHI such that her last day of work was June 16, 2004. The appellant contends that this acceleration of her resignation, based on the Family–Care–Registry notice, was essentially a termination.

The appellant points to nothing in the record that supports the fact that her "supervisor" requested her to return to work after her resignation had been accepted. In fact, in violation of Rule 84.04(i), the appellant, in her argument of this point, does not make any specific page references to the legal file or transcript. "[T]his requirement is mandatory and essential for the effective functioning of appellate courts, which cannot spend time searching the record to determine if factual assertions are supported by the record. This would effectively require the court to act as an advocate for the non-complying party...." *Brown v. Shannahan*, 141 S.W.3d 77, 80 (Mo.App.2004). This alone would be a sufficient basis for us to deny this point. *Id.* In any event, because she points to nothing in the record to support the fact that she was allowed to rescind her resignation, the record would reflect the fact that she wholly failed to carry her burden to show that she is entitled to receive unemployment compensation benefits. *Madewell v. Div. of Employment Sec.*, 72 S.W.3d 159, 165 (Mo.App.2002). Moreover, in direct contravention of the appellant's claim, Bramell testified that when the appellant requested that her resignation be rescinded, her request was denied. Where there is conflicting evidence as to a factual issue, we leave the resolution of that conflict to the Commission. *Worley*, 978 S.W.2d at 483. The Commission obviously resolved that conflict against the appellant, and we will not disturb it on appeal.

Because the facts found by the Commission and the record support the Commission's determination that the appellant voluntarily left her employment with HHI by written resignation, we cannot and will not disturb that determination on appeal.

Point denied.

Having concluded that the Commission did not err in finding that the appellant voluntarily quit her employment with HHI, we now turn to her claim in Point I, in which she attacks the Commission's finding that she quit without good cause.

## II.

In Point I, the appellant claims that the Commission erred in disqualifying her from receiving immediate unemployment compensation benefits, based upon its finding that she voluntarily left her employment with HHI without good cause, pursuant to § 288.050, because the facts found by the Commission and the record do not support a finding that she did not have good cause for leaving her employment. Specifically, the appellant claims that the Commission's determination that she quit her employment with HHI without good cause was not supported by the record in that, viewing the record as a whole, it is clear that her resignation resulted from her hours being cut from thirty hours a week to fifteen hours, which "any reasonable person would have concluded was unacceptable."

Our review as to good cause is a mixed bag of fact and law. In reviewing for good cause, we must first determine the actual basis for the employee quitting, which is a factual determination we review to determine whether there is substantial

and competent evidence to support it. *CNW Foods, Inc. v. Davidson*, 141 S.W.3d 100, 102–103 (Mo.App.2004). Once that determination is made, the question of whether that reason for quitting constitutes good cause for purposes of § 288.050 is a legal question, which we review *de novo*. *Quik 'N Tasty Foods*, 17 S.W.3d at 626. In this case, the Commission, by adopting the findings of the Appeals Tribunal, found that the claimant tendered her resignation when she did because her work hours had been temporarily reduced. From this finding, the Appeals Tribunal and the Commission concluded that the appellant did not have good cause to terminate her employment because a "reasonable worker would instead use the additional non-working time either to find another part-time job or to look for full-time employment elsewhere." Thus, the question of whether the appellant resigned because her hours were temporarily reduced is a question of fact and we will defer to the Commission's determination. *CNW Foods*, 141 S.W.3d at 102–103. However, whether the Commission's decision that a temporary reduction of hours is not good cause for terminating employment, for purposes of § 288.050, is correct, is a question of law, which we will review *de novo*. *Quik 'N Tasty Foods*, 17 S.W.3d at 626.

 Even if the Commission is justified in finding that an employee voluntarily left his employment, the employee can still be entitled to immediate benefits if he can show that he quit with good cause. *Taylor*, 153 S.W.3d at 881. Thus, good cause is a condition precedent to immediate receipt of unemployment compensation benefits where the employee voluntarily quits his employment. *Hessler v. Labor & Indus. Relations Comm'n*, 851 S.W.2d 516, 518 (Mo. *banc* 1993). The purpose of the "good cause" requirement is to eliminate what might otherwise be an incentive to quit work. *Div. of Employment Sec. v. Labor & Indus. Relations Comm'n*, 625 S.W.2d 882, 884 (Mo.App. 1981). The employee bears the burden of proving the existence of good cause. *Baker v. Midway Enters., Inc.*, 78 S.W.3d 188, 192 (Mo.App.2002).

The appellant claims that she resigned because her hours were reduced from thirty hours a week to fifteen hours, which was a substantial reduction in pay constituting good cause to quit for purposes of § 288.050, citing *Charles v. Mo. Div. of Employment Sec.*, 750 S.W.2d 658, 661 (Mo.App.1988); *Armco Steel Corp. v. Labor & Indus. Relations Comm'n. Div. of Employment Sec.*, 553 S.W.2d 506 (Mo. App.1977). While HHI concedes that her hours were cut in half, it contends that such reduction in hours was for two weeks only and that a reduction in hours for such a short duration did not constitute good cause to quit, citing *Div. of Employment Sec.*, 625 S.W.2d 882.

 "Good cause" for purposes of determining eligibility for unemployment benefits has no fixed or precise meaning and is judged by the facts of each case. *Quik 'N Tasty Foods*, 17 S.W.3d at 626. "Good cause" has been interpreted to mean "cause that would motivate the average able-bodied and qualified worker in a similar situation to terminate his or her employment." *Id.* Conditions which motivate the employee to voluntarily leave "must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical, and good faith is an essential element." *Id.* Thus, two elements have been identified as necessary in establishing good cause—reasonableness and good faith. *Id.* Reasonableness requires that the employee can prove that his concerns are real or that any reasonable worker would have these concerns. *Bunch v. Div. of Employ-*

*ment Sec.,* 965 S.W.2d 874, 878 (Mo.App. 1998). Good faith requires that the employee make a showing that an attempt was made to resolve the dispute before he took the drastic step of quitting the job. *Id.* Here, the element of reasonableness is at issue.

■■ The parties agree that the appellant's hours were reduced from thirty hours per week (six hours per day for five days a week) to fifteen hours (three hours per day for five days a week). However, a factual dispute exists over whether this was a permanent or temporary reduction in hours. Bramell testified that the appellant's hours were only reduced temporarily for a two-week period. She explained that the reduction occurred because the niece of the appellant's then-client was going to be off work for two weeks, recovering from surgery, such that during that time she would be available to watch her aunt so that there would be no need for the appellant to be there six hours each day. The appellant conceded in her testimony that she was told by Bramell that her reduction in hours was only for two weeks; however, she contends in her brief she "had little reason to blindly trust that that would be the case where others were being assigned to her work at the same time that the employer was saying work was not available." The Commission was free to resolve this conflict in evidence in favor of HHI, which it did, finding that the reduction in hours was only temporary, especially when the appellant, on cross-examination, answered in the affirmative when asked: "Okay, so it was just a temporary cutback?" Thus, there was substantial and competent evidence in the record to support the Commission's finding that the reduction in the appellant's hours was only for a two-week period. The question then becomes whether a substantial reduction in hours for a short duration constitutes good cause to quit for purposes of § 288.050.

The appellant cites *Charles* and *Armco Steel* as supporting the fact that a substantial reduction in wages constitutes good cause for quitting employment. Those cases clearly stand for that proposition. However, neither case speaks to the issue that confronts us here as to whether a substantial reduction in pay for a short period of time constitutes good cause.

Although slightly different factually from the case at bar, we find *Div. of Employment Sec.,* 625 S.W.2d at 884, to be persuasive. There the issue was whether a substantial reduction in pay, resulting from the reduction in the amount of "piecework" being performed by the claimant, for which she was being paid by the piece, constituted good cause entitling her to benefits. *Id.* at 883. Relying on *Armco Steel,* the claimant contended that the sole test of good cause was whether or not there was a substantial reduction in pay. *Id.* at 884. The court disagreed with the Commission's decision, which was that the claimant was entitled to immediate benefits in that she quit with good cause—a substantial reduction in pay. *Id.* at 884–85. In distinguishing *Armco Steel,* the court noted that in that case factors were in play that were not in play in its case, pointing out that, unlike in *Armco Steel,* while the claimant suffered a reduction of income, she was still being compensated at the same rate of pay such that "[t]o the same extent that she lost income, she gained time to either seek other full-time employment, or engage in another part-time job." *Id.* at 884. Relying on the proposition that "good cause does not ordinarily exist when a person gives up partial employment for none at all," and that no other factors were at play that would have compelled a reasonable person in the claimant's position to quit, the court rejected, as a matter of law, the proposition that the substantial reduction in income, as op-

posed to the reduction of the rate of pay, would, without consideration of any other factors, constitute a quit with good cause. *Id.*

Here, it is undisputed that the appellant's rate of pay was not being cut. She was still going to be paid $7.80 an hour. Rather, for two weeks, she would experience a reduction in income. For that short period of time, she was free to seek other part-time or full-time employment.[2] Instead, she chose to quit and become totally unemployed, even though, as she testified, she had no prospects for employment. And, in fact, at the time of the Appeals Tribunal's hearing, she still was not employed. We fail to see how a reasonable person would have felt compelled to quit his job over a reduction in hours for only two weeks with no reduction in the rate of pay, no prospects of employment, and the opportunity to look for other employment, either part-time or full-time, while still employed, albeit part-time. Hence, relying on *Div. of Employment Sec.*, we find that the Commission did not err in finding that the appellant quit her employment with HHI without good cause.

Point denied.

### Conclusion

For the reasons stated, we affirm the Commission's decision that the appellant voluntarily left her employment without good cause.

ULRICH and HARDWICK, JJ., concur.

---

**2.** In that regard, the appellant contends in her brief that it would be "difficult, if not impossible, to hold [her HHI] job while seeking other employment" (15 hours of work spread out over five days). We fail to see the logic of that argument. *See Rothschild v.*

*Labor & Indus. Relations Comm'n, Div. of Employment Sec.*, 728 S.W.2d 720, 722 (Mo. App.1987) (stating that "acceptance of part-time work would have allowed claimant to search for other full-time employment or take another part-time job").