Diana **MENA**, Appellant,

v.

**COSENTINO GROUP, INC.; Defendant,**

**Division of Employment Security, Respondent.**

No. WD 67913.

Missouri Court of Appeals, Western District.

Oct. 2, 2007.

Diana Mena, Kansas City, MO, pro se.

Dwayne Jefferson, Esq., Jefferson City, MO, for Respondent.

Before HOLLIGER, P.J.,
LOWENSTEIN and SMART, JJ.

HAROLD L. LOWENSTEIN, Judge.

This appeal is taken by the claimant who was denied unemployment benefits by an order of the Labor and Industrial Relations Commission, which affirmed a decision of the Appeals Tribunal for the respondent Missouri Division of Employment Security ("MDES"). For three years, Claimant Mena was an employee of Price Chopper grocery stores, which is owned by respondent Cosentino Group, Inc. ("Cosentino"). At the time she terminated her employment with Cosentino, she was working as a cashier. The cashier's position required Claimant to stand for several hours at a time. Her knees were arthritic, which, according to Claimant, caused her significant pain as she performed her duties. After being told by Price Chopper management that she could not seat herself in the grocery bagging area on the surface where the bag holding devices were located, Claimant requested a stool for use during her shifts. Her request was denied, and she was told that if she wanted a stool she should apply for a

job at a store owned by a different company. On August 29, 2006, Claimant terminated her employment with Cosentino, stating that she was medically required to quit her job because standing had become too painful. This case pivots on the issue of whether she voluntarily left work without good cause attributable to her work or employer. *See infra* § 288.050.1, RSMo 2000.

In March of 2005, Claimant saw Dr. Madison with regard to the pain in her knees. He composed a "Medical Certificate" on her behalf, dated April 29, 2005, which diagnosed her condition as osteoarthritis of the knees and stated, as a restriction on her ability to work, "[Claimant] should not lift or push loads above 50 pounds." Dr. Madison later filled out a Missouri Department of Revenue Motor Vehicle Bureau Form 1776 (request for disabled license plates) on which he checked the box indicating that Claimant needed disabled plates because she "cannot ambulate or walk 50 feet without stopping to rest." This form was dated September 15, 2006. Claimant asserts a discussion took place during a visit with Dr. Madison regarding her employment with Price Chopper, wherein Dr. Madison said, "If you can't stand, then I guess you'll have to quit." On November 7, 2006, Dr. Madison examined Claimant again and issued another medical certificate restricting her to standing for no more than one hour without a break.[1]

After leaving work on August 29, Claimant filed a claim for benefits on September 11, 2006, with MDES. A deputy denied the claim on the grounds that Claimant left work voluntarily without good cause. The deputy found that Claimant had failed to provide documentation from a medical doctor stating that she had been advised to quit her job. On October 16, 2006, the

---

1. For a clearer understanding of the facts, a timeline of events follows this opinion.

MDES Appeals Tribunal reviewed the decision of the Deputy, holding a telephone conference hearing. The Appeals Tribunal considered Dr. Madison's medical certificate of April 29, 2005, the Form 1776 application, and the purported statement of the doctor about Claimant possibly having to quit her job. The November 7, 2006 medical certificate containing the one-hour restriction on standing was not provided for consideration by the Appeals Tribunal because it was not yet in existence. In its conclusions of law, the Appeals Tribunal affirmed the Deputy's ruling and found a lack of good cause under § 288.050.1(1) RSMo 2000,[2] since Claimant had not provided evidence of medical causation linking the aggravation of her arthritis to her position at Price Chopper. Claimant then sought review by the Labor and Industrial Relations Commission ("Commission"), which, on December 13, 2006, adopted the decision of the Appeals Tribunal. Claimant had included the November 7, 2006 medical certificate with her appeal to the Labor and Industrial Relations Commission. Prior to that point, Claimant had provided no medical certificate to a reviewing authority regarding her ability to stand. However, as the Respondents note, there is no evidence in the record as to whether she requested that the certificate be submitted as and examined as additional evidence or whether the Commission actually considered it.

On appeal to this court, Claimant asserts error in the decision of the Commission in that the decision misapplies the law and is not supported by the evidence because (1) the evidence shows that Claimant was medically unable to maintain her employment, and (2) the referee misinformed the commission by "falsifying evidence."

## STANDARD OF REVIEW

The review of the Commission's decision in an unemployment compensation case is governed by article 5, section 18 of the Missouri Constitution and Section 288.210, RSMo 2000. *Shields v. Proctor & Gamble Paper Products Co.,* 164 S.W.3d 540, 543 (Mo.App.2005). This court may modify, reverse, remand for rehearing, or set aside the Commission's decision only where "(1) the Commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. *See* § 288.210, RSMo 2000. In the absence of fraud, the Commission's factual findings are conclusive and binding on this [c]ourt if supported by competent and substantial evidence." *Shields,* 164 S.W.3d at 543. This court's function is to determine whether the Commission, based upon the whole record, could have reasonably made its findings and reached its result. *Id.* The court is not bound, however, by the Commission's conclusions of law or the Commission's application of law to the facts. *Id.* Issues of law fall within the court's province of independent review and correction is appropriate where the decision is erroneous. *Yellow Freight Sys. v. Thomas,* 987 S.W.2d 1, 3 (Mo.App.1998). The question of whether a claimant had good cause to leave her employment is a legal issue, so the court does not defer to the Commission's determination on the matter. *Quik 'N Tasty Foods, Inc. v. Div. of Employment Sec.,* 17 S.W.3d 620, 624 (Mo. App.2000).

## POINT I

Claimant asserts error in the Commission's decision by claiming that the evi-

2. All further statutory references are to the Missouri Revised Statutes of 2000.

dence, instead of supporting a rejection of her claim, showed that she was medically unable to continue employment with Price Chopper. Cosentino argues that the Commission found that Claimant failed to meet her burden of proof by producing expert medical evidence showing a causal connection between Claimant's condition and her employment.

■■■ Missouri's unemployment benefits law, in § 288.050, provides that benefits will be denied to unemployed workers under certain conditions:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer.

§ 288.050, RSMo 2000. In an unemployment benefits case, the claimant bears the burden of proving the existence of good cause for a voluntary departure. *Baker v. Midway Enters., Inc.*, 78 S.W.3d 188, 192 (Mo.App.2002). The good cause necessary to support an award of unemployment benefits where an employee voluntarily quits must be cause attributable to her work or her employer. *Id.* "Attributable to [her] work or to [her] employer" means that it must be the work or the employer himself that creates the condition making it unreasonable to expect this employee to continue work. *Id.* (internal quotations marks omitted). Work causing an aggravation of an existing condition is also sufficient. *Bussmann Mfg. Co. v. Indus. Comm'n of Mo.*, 327 S.W.2d 487, 491 (Mo.App.1959). Whether the cause is attributable involves

the application of the law to the facts and, therefore, is a question of law, which the court reviews independently of the Commission's determination. *Baker,* 78 S.W.3d at 193.

■■■ Ordinarily, "[i]f a claimant quits a job and seeks unemployment compensation benefits alleging medical reasons as good cause for quitting, such claimant must adduce expert medical evidence to prove a causal connection between the employee's work and the medical reason relied on." *Smith v. U.S. Postal Serv.,* 69 S.W.3d 926, 928 (Mo.App.2002). "An exception to this rule exists where the causal connection is within the common knowledge or experience of a layperson." *Id.* Although many of the cases on the subject find medical evidence necessary with regard to claims of mental illness or depression, medical evidence has also been found necessary for claims of good cause due to workplace aggravation of injuries to the body. *See Mo. Forge, Inc. v. Turner,* 118 S.W.3d 313 (Mo.App.2003) (requiring expert medical evidence to show that back pain was aggravated by claimant's employment); *Van-Drie v. Performance Contracting & Div. of Employment Sec.,* 992 S.W.2d 369 (Mo.App.1999) (noting that claimant did not meet his burden of establishing by medical evidence the causal connection between his preexisting back injury and the workplace aggravation of that injury). Specifically with regard to workplace aggravation of arthritic conditions, one court has stated, "Notwithstanding the fact that arthritis is 'numerically the most significant chronic disease faced by the population today,' we cannot say the facts as to existence, causation, and aggravation of arthritic conditions are within common knowledge and experience so as to dispense with the necessity for some medical evidence." *Diversified Asphalt, Inc. v. Labor & Indus.*

*Relations Comm'n of Mo.*, 622 S.W.2d 716, 719 (Mo.App.1981) (citation omitted).

■■■ It should first be noted that the November 7, 2006 medical certificate limiting Claimant to standing for only one hour without a break post-dated the Deputy's decision and the review performed by the Appeals Tribunal. It was therefore, not a consideration in the decision of the Appeals Tribunal that was adopted by the Commission. It was, however, attached by Claimant to her appeal to the Commission. While the Commission has discretion as to the hearing of new evidence in cases before it, state regulation precludes additional evidence except "upon the ground of newly discovered evidence which with reasonable diligence could not have been produced at the hearing before the administrative law judge." 8 C.S.R. § 20–3.030(2)(A) (2007); *Bock v. Broadway Ford Truck Sales, Inc.*, 55 S.W.3d 427, 439 (Mo.App.2001). There is nothing in the record explicitly indicating that the Commission rejected the November 7th certificate. However, since the Commission adopted the Appeals Tribunal's decision, which predated that certificate, it appears that the certificate was properly excluded from consideration by the Commission as not falling within the exception for allowable new evidence. A Commission's decision to exclude additional evidence is overturned only where the Commission acted arbitrarily or abused its discretion. *Bock*, 55 S.W.3d at 439 (finding that the Commission did not abuse its discretion in excluding new evidence that would have cleared up questions as to the cause of pain). There is no abuse of discretion in the exclusion of a doctor's certificate that certainly could have been obtained and produced for the Deputy or the Appeals Tribunal if Claimant's medical condition were as she asserts.

The Appeals Tribunal's decision, as adopted by the Commission, notes that the only medical documentation submitted by Claimant to support her contention that knee pain due to arthritis was aggravated by her working conditions is the April 29, 2005 limitation on lifting or pushing loads greater than fifty pounds and the Form 1776 application for disabled license plates. Both of these documents were signed by Dr. Madison and contained his medical opinion with regard to Claimant. Also, both documents state that Claimant was afflicted with an arthritic condition. What they lack for purposes of this analysis is any connection of the arthritic condition to Claimant's ability to stand at a cash register during her shift at Price Chopper. The April 29 medical certificate states, "Due to her medical condition, [Claimant] is able to work with the following restrictions: Restrictions include: [Claimant] should not lift or push loads above 50 pounds." On the Form 1776 application entitled "Physician's Statement for Disabled License Plates / Placard," Dr. Madison checked a box that reads, "The person cannot ambulate or walk 50 feet without stopping to rest due to a severe and disabling arthritic, neurological, orthopedic condition, or other severe and disabling condition." Neither of these documents, considered alone or together, amounts to medical evidence that Claimant's work or employment aggravated a medical condition to the point where good cause existed for her to voluntarily leave this job.

The only remaining source of medical opinion with regard to Claimant's condition is the hearsay statement attributed to Dr. Madison, stating to Claimant, "If you can't stand, then I guess you'll have to quit." Claimant admitted at the Appeals Tribunal telephone conference hearing that the statement was made in passing and explained that she had not sought to obtain a written opinion from Dr. Madison stating

that she should quit her job because she did not feel it was a fair request based on the conversation. Clearly, not even the Claimant asserts that the statement, taken in context, was advice to Claimant from a medical doctor that her then-existing condition was aggravated by her employment to the extent that she should quit. If this had been the case, she surely would not have thought it unfair to ask for such a statement in writing. Furthermore, even if the statement as related by Claimant had been reduced to writing, it would merely have amounted to a suggestion by her physician that, upon the worsening of her condition to the point where she could not stand, Claimant would probably have to leave her position as a cashier. This still would not constitute medical evidence of an aggravated condition providing good cause for Claimant's decision to leave her job at the time that she did.

For the reasons discussed above, it cannot be said that the Commission erred in finding that Claimant failed to fulfill her burden of producing medical evidence and, hence, that good cause did not exist for Claimant's voluntary departure from employment. Point I is denied.

## POINT II:

For her second point of error, Claimant states, "The Commission erred in denying appellant unemployment benefits in that it misapplied the law and its decision is unsupported by evidence finding that the referee misinformed the Commission by falsifying evidence." As far as this court can decipher, Claimant argues that the Appeals Tribunal referee "falsified" evidence that was in the record before the Commission, because the findings of fact contained in the Appeals Tribunal's decision were not consistent with Claimant's view of the evidence. Claimant relates this argument to error on the part of the Commission by asserting, essentially, that the Appeals Tribunal's errant assessment of the evidence created an incomplete record for the purpose of review by the Commission. This argument presupposes that the Appeals Tribunal dictates the record to be reviewed by the Commission by what it includes and excludes from its findings of fact. However, section 288.200 RSMo, which governs the appeal process of the Commission, states that "the commission may affirm, modify, reverse, or set aside the decision of the appeals tribunal on the basis of the evidence previously submitted in such case or may take additional evidence or may remand the matter to the appeals tribunal with directions." § 288.200.1, RSMo 2000. A brief glance at this section reveals that the record considered by the Commission is not limited to the findings of fact made by the Appeals Tribunal. Point II is denied.

The decision of the Commission is *affirmed.*

All concur.

### TIMELINE

**2005**

March 9: Claimant Mena sees Dr. Madison regarding pain in her knees.

April 29: Doctor Madison issues a "Medical Certificate" diagnosing Claimant with osteoarthritis and restricting Claimant's work activity to lifting or pushing no more than fifty pounds.

**2006**

August 29: Claimant quits her job at Price Chopper, citing knee pain as the reason.

September 11: Claimant files for unemployment benefits with the MDES, providing (1) the April 29th medical certificate, and (2) her assertion that Dr. Madison told her she might have

to quit her job as evidence of good cause for quitting.

September 15: On behalf of Claimant, Dr. Madison fills out a Motor Vehicle Bureau Form 1776 (request for disabled license plates) on which he checked the box indicating that Claimant needed disabled plates because she "cannot ambulate or walk 50 feet without stopping to rest."

September 18: Claimant provides Form 1776 to the MDES for consideration along with her claim.

September 20: An MDES Deputy denies Claimant's claim, stating as the reason that she failed to provide documentation from a medical doctor that she had been advised to quit her job.

October 16: The MDES Appeals Tribunal holds a telephone conference with Claimant. The Appeals Tribunal reviews Dr. Madison's medical certificate of April 29, 2005, the Form 1776 application, and the purported statement of the doctor about Claimant possibly having to quit her job.

October 18: The Appeals Tribunal, after reviewing the evidence, denies the claim. It cites a failure to provide medical evidence linking the aggravation of Claimant's injury to her work as the reason.

November 7: Dr. Madison issues another "Medical Certificate" limiting Claimant to standing no more than one hour without a break.

November 14: Claimant appeals her claim to the Labor and Industrial Relation Commission, attaching the November 7th certificate to the appeal.

December 13: The Labor and Industrial Relations Commission, after considering the evidence presented before the Appeals Tribunal, adopts the findings and decision of the Appeals Tribunal.