KANSAS CITY POWER & LIGHT
COMPANY, Appellant,

v.

Deborah SEARCY and Division
of Employment Security,
Respondents.

No. WD 58411.

Missouri Court of Appeals,
Western District.

Oct. 10, 2000.

Robert P. Gingrich, Jr., Kansas City, for appellant.

Sharon A. Willis, Kansas City, for respondent, Division of Employment Security.

Before EDWIN H. SMITH, P.J., and ULRICH and ELLIS, JJ.

EDWIN H. SMITH, Presiding Judge.

Kansas City Power and Light Company appeals the decision of the Labor and Industrial Relations Commission (Commission) that Deborah Searcy, whom the Commission found to have voluntarily left her employment with the appellant, was not disqualified under § 288.050 [1] from receiving unemployment compensation benefits because she left with good cause. § 288.050.1(1).

The appellant raises two points on appeal. It claims that the Commission erred in deciding that Searcy was not disqualified from receiving unemployment benefits based upon a finding that she voluntarily left her employment with the appellant for good cause, a panic attack which was attributable to or caused by her work, because: (1) in so finding, the Commission failed to apply an objective, reasonable person standard, as required by § 288.050.1(1), in that "applying that stan-

dard there was no evidence that the work or the employment was objectively unreasonable or intolerable"; and (2) the evidence was insufficient to support such a finding in that Searcy did not establish with expert medical testimony, as required by § 288.050.1(1), a causal connection between the panic attack she claimed to have suffered and her work.

We reverse and remand.

## Facts

Searcy worked for the appellant approximately 18 years as a junior clerk at the appellant's Northland Service Center. Her duties in this position were mainly clerical, including data entry, processing employee time cards for the service center's 70 employees, ordering office supplies, handling telephone calls from builders and electricians, and distributing jobs to planners, real estate department workers, foremen, and the commercial manager. In late August 1999, she was informed that she was being assigned to the employer's "Call Center" to work temporarily as a customer service representative. At the time, it was contemplated that she would work there between two and four months. Other employees were also assigned to the Call Center on a temporary basis, in accordance with their union's collective bargaining agreement.

During the last six years of her employment, Searcy had suffered repeated harassment by female co-workers, due in part to a sexual harassment claim filed by her against a male co-worker. As a result of the harassment, she began suffering panic attacks, manifested by dizziness, fainting, heart palpitations, breathing problems, and nausea. As part of her treatment for these problems, Searcy's physician, Dr. William Whitley, placed her on Prozac, a medication for anxiety, and two other medications. In addition, she

**1.** All statutory references are to RSMo Supp. 2000, unless otherwise noted.

sought and received counseling through the appellant's free counseling service to help her handle the situation at work. Searcy also signed a waiver of promotion so she would never have to do senior clerk responsibilities, to assure that she would not be placed in any stressful job situations. Searcy's working conditions improved, and she was satisfied with her job as a junior clerk.

After learning that she was temporarily being transferred to the Call Center, Searcy visited with Dr. Whitley concerning her apprehension about the new work assignment. Thereafter, on August 31, Dr. Whitley wrote a letter to the appellant's medical department, stating that Searcy suffered from "stress-related panic attacks" and directing that she be placed in a "low-stress environment." He further stated his belief that her "drive back and forth to work in heavy traffic areas would be too stressful for [her] along with the responsibilities of her position as a Customer Service Representative." Nevertheless, on September 14, 1999, the appellant's physician, Dr. Edward Kinports, based upon a telephone discussion with Dr. Whitley, released Searcy to work in the Call Center.

Searcy first reported to the Call Center on Thursday, September 16, 1999. She received one-on-one training from a Call Center employee for the entire day. The Call Center employee took all of the customer calls, while Searcy observed. On Friday, September 17, 1999, Searcy took some customer calls during the last two hours of the day, while the Call Center employee observed her work. Searcy testified that she did not feel that this was adequate or proper training and that she felt completely confused as to her job duties.

On Monday, September 20, 1999, Searcy arrived at work at 7:30 a.m. Upon arriving at her workstation, she discovered that her computer password did not work and, as a result, she could not sign on to the computer to begin taking calls. She asked an employee who was acting as temporary supervisor for help and was given a list with five different sign-on codes, but none of them worked. She then called the "Help Desk," but they were unable to get her signed on and told her to contact a manager in her area. Searcy could not locate a supervisor in the area.

At approximately 8:30 a.m., Searcy began to feel ill. Her symptoms included dizziness, chest pains, and nausea. Recognizing these as symptoms of a panic attack, she left the building, went to her car, and called her regular supervisor, Carol Baxter, at the Northland center. She told Baxter that she did not feel that she could do the job and that she was ill as a result of the assignment. Baxter responded that she would have to go to the appellant's medical department to see one of the appellant's doctors. Searcy refused to go because she had already been there prior to starting the Call Center job; and since they had simply made her report to work anyway, she felt that it would be pointless to go again. Consequently, Baxter stated that she would have to contact the appellant's Labor Relations Department and get back with her. After arriving home, Searcy spoke with Dr. Whitley on the telephone. Later that afternoon, Baxter sent a letter to Searcy stating that she was considered to have abandoned her position and that such action would be taken as a voluntary resignation. Searcy never returned to work.

On September 28, 1999, Searcy filed for immediate unemployment compensation benefits. On October 12, 1999, a Missouri Division of Employment Security deputy determined that she was not disqualified from benefits under § 288.050.1, as she quit with good cause attributable to her employment. After a hearing in front of an appeals referee on December 2, 1999,

the Employment Appeals Tribunal affirmed the deputy's decision. The appellant appealed to the Commission which, in a two-to-one decision, adopted the decision of the Tribunal on March 1, 2000.

This appeal follows.

## Standard of Review

■■■ Appellate review of Commission decisions concerning unemployment compensation benefits is governed by § 288.210, which provides, in pertinent part:

The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

To the extent that an appeal under § 288.210 involves issues of law, we do not defer to the Commission; to the extent that it involves evaluating evidence supporting findings of the Commission, there is a two-step process that we must follow. *Travelers Equities Sales, Inc. v. Div. of Employment Sec.,* 927 S.W.2d 912, 917 (Mo.App.1996).

In the first step, the court examines the whole record, viewing the evidence and all reasonable inferences drawn therefrom in the light most favorable to the award, to determine if the record contains sufficient competent and substantial evidence to support the award. [I]f not, the Commission's award must be reversed. If there is competent and substantial evidence supporting the award, the court moves to the second step, where it views the evidence in the light most favorable to the award, but must consider all evidence in the record, including that which opposes or is unfavorable to the award, take account of the overall effect of all of the evidence, and determine whether the award is against the overwhelming weight of the evidence.

*Id.* (*quoting Davis v. Research Medical Center,* 903 S.W.2d 557, 571 (Mo.App. 1995)).

## I.

Because we find that Point II is dispositive of this appeal, we address it alone. In Point II, the appellant claims that the Commission erred in deciding that Searcy was not disqualified from receiving immediate unemployment compensation benefits, based upon a finding that she voluntarily left her employment with the appellant for good cause, a panic attack which was attributable to or caused by her work, because the evidence was insufficient to support such a finding in that Searcy did not establish with expert medical evidence, as required by § 288.050, a causal connection between the panic attack she claimed to have suffered and her working conditions. We agree.

■■■ Section 288.050 governs whether an employee is qualified for immediate receipt of unemployment compensation benefits, and provides, in pertinent part:

1. Notwithstanding the other provisions of this law, a claimant shall be disqualified for waiting week credit or benefits until after the claimant has

earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:

(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer. . . .

§ 288.050.1(1). This section "makes good cause a condition precedent to immediate receipt of unemployment compensation benefits where the employee voluntarily quits his or her job." *Hessler v. Labor & Indus. Relations Comm'n,* 851 S.W.2d 516, 518 (Mo. *banc* 1993). "Section 288.050.1 requires that good cause be 'attributable to his work or to his employer.' " *Id.* This language means "that it must be the work or employer himself that creates the condition making it unreasonable to expect *this employee* to continue work." *Id.* As such, to obtain immediate unemployment compensation benefits, after leaving his or her employment voluntarily, an employee must show that he or she did so with good cause, attributable to his or her work or employer. *Id.* (*citing O'Dell v. Div. of Employment Sec.,* 376 S.W.2d 137, 142 (Mo.1964)).

Although Searcy alleged in her claim for benefits that she did not voluntarily terminate her employment, the Commission found that she did, which finding is not in dispute on appeal. Thus, to demonstrate her entitlement to immediate benefits, she had to establish that the voluntary termination of her employment was done with good cause. In order to carry her good-cause burden, Searcy alleged that she was forced to leave her work on September 20, 1999, because she suffered a "serious panic attack," which was an aggravation of an existing medical condition and was caused by her new temporary duties as a customer service representative. The appellant claims that, in order for her to carry her burden of proof and establish that the

panic attack in question was caused by her employment, Searcy was required to present expert medical testimony; because she failed to do so, the Commission's decision was not supported by substantial and competent evidence. Although Searcy did not file a brief, the Commission contends in its brief that the letter written by Dr. Whitley constituted sufficient expert medical evidence to establish the requisite causal connection between her work conditions on the day she left work and her panic attack, compelling and justifying her voluntarily quitting her employment. We disagree.

■ It is well settled in the law that, for purposes of receiving unemployment compensation benefits, where the causal connection between the employee's work and the medical reason relied upon for establishing good cause for quitting is not within the common knowledge or experience of a layperson, expert medical evidence is required to establish the causal connection. *Woodard v. Hudson Foods, Inc.,* 952 S.W.2d 331, 337 (Mo.App.1997); *Reed v. Labor & Indus. Relations Comm'n,* 664 S.W.2d 650, 652 (Mo.App. 1984); *Clevenger v. Labor & Indus. Relations Comm'n,* 600 S.W.2d 675, 676 (Mo. App.1980). As stated, *supra,* no argument was advanced by the Commission that the causation of Searcy's panic attack was within the common knowledge of a layperson. Even if it had been, however, the cases that have addressed the issue of whether the evidence was sufficient to establish that claimed anxiety, depression, or panic attacks caused an employee to quit have required medical evidence. *Woodard,* 952 S.W.2d at 337; *Reed,* 664 S.W.2d at 652–53. As noted in *Clevenger,* "there can be little doubt a question involving *causa causans* of emotional disturbances is a complex one, peculiarly appropriate for science to answer, and a question which no [fact finder] should be permitted to resolve in the absence of expert testimony." 600 S.W.2d at 676 (*quoting Harrison v. Weller,* 423 S.W.2d 226, 230 (Mo.App.1967)).

■ In claiming that there was expert medical evidence establishing the requisite medical causation for receipt of immediate benefits by Searcy, the Commission points to the letter from Dr. Whitley to the appellant's medical department on August 31, 1999. The letter reads:

> To Whom It May Concern:
>
> Deborah Searcy is a patient of mine whom I have seen recently for injuries sustained in an automobile accident and stress related panic attacks. The patient states that her employer requires a letter to be written for her time off of work in order to place her in a low stress environment. If she does return to work earlier, she should be placed in a low stress position, with no high stress tasks added to her daily work load for the following medical reasons.
>
> I have seen Deborah in my office recently for back pain and complaints of depression and anxiety. I strongly feel that the drive back and forth to work in heavy traffic areas would be too stressful for this patient along with the responsibilities of her position as a Customer Service Representative. I would recommend that Deborah not return to work until September 14th to resume her current Junior Clerk position.
>
> If you have questions about this patient, please contact me at my office.

Although the letter indicates that Searcy had a history of "stress related panic attacks" and "should be placed in a low stress position, with no high stress tasks added to her daily work load," it simply concludes, without providing any specifics, that her "drive back and forth to work in heavy traffic areas would be too stressful for [her] along with the responsibilities of her position as a Customer Service Representative." Given the fact that the letter was written prior to Searcy's even starting the temporary job assignment as a custom-

er service representative or being made aware of what her responsibilities would be in that position, the letter did not, and obviously could not, provide any details as to the work she was actually required to perform or what actually occurred on the day in question to cause her panic attack. *Woodard,* 952 S.W.2d at 336–37; *Reed,* 664 S.W.2d at 653. As such, the letter from Searcy's doctor was insufficient to establish the requisite medical causation in order for her to be entitled to immediate unemployment compensation benefits under § 288.050.1(1).[2] *Id.* Hence, the Commission's decision in finding that Searcy was not disqualified from receiving immediate benefits was not supported by substantial and competent evidence, requiring us to reverse. *Id.*

### Conclusion

The decision of the Commission finding that Searcy was not disqualified from receiving immediate unemployment compensation benefits under § 288.050.1 is reversed and remanded for the Commission to enter its order finding that Searcy was disqualified from receiving immediate benefits because she voluntarily quit her employment without good cause.

ULRICH and ELLIS, JJ., concur.

---

2. This was the position of the dissenting member of the Commission.