**Frances June SMITH, Petitioner–Appellant,**

v.

**U.S. POSTAL SERVICE and Division of Employment Security, Respondents–Respondents.**

No. 24341.

Missouri Court of Appeals, Southern District, Division One.

March 25, 2002.

Connie J. Clark, Osage Beach, for appellant.

Ninion S. Riley and Cynthia Quetsch, Jefferson City, for Division of Employment Security.

KENNETH W. SHRUM, Presiding Judge.

Frances June Smith ("Employee") appeals the decision of the Labor and Industrial Relations Commission ("Commission") denying her unemployment benefits under the Missouri Employment Security Law, § 288.010 *et seq.*[1] Employee alleges Commission's decision is "against the weight of the evidence, in that [Employee] did not leave her employment without good cause." We disagree. We affirm.

Employee began working for the United States Postal Service ("Employer") in 1986 and continued to work for it until voluntarily resigning on July 31, 2000. Employee gave various reasons for quitting her job including "harassment" and "humilia-

---

**1.** All statutory references are to RSMo (2000) unless otherwise indicated. The Commission adopted the decision of the Division of Employment Security's Appeals Tribunal as its final decision.

tion," problems with co-workers, anxiety and nerves, and confusion regarding the management and policies of Employer. Employee claims these problems constituted "good cause" for resignation as contemplated by § 288.050.[2]

The Commission determined Employee failed to show good cause as her claims of "anxiety and depression [were] surely elevated as much by concern about tests for suspected threats to her health from a serious illness as from any of the circumstances described by [Employee] as caused by [Employer]." Moreover, the Commission found Employee's reasons for quitting were legally insufficient to demonstrate good cause.

◼ Review of the Commission's decision denying unemployment benefits is governed by § 288.210. *Kansas City Power and Light Co. v. Searcy*, 28 S.W.3d 891, 894 (Mo.App.2000). In pertinent part, the statute provides:

"The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

"(1) That the commission acted without or in excess of its powers;

"(2) That the decision was procured by fraud;

"(3) That the facts found by the commission do not support the award; or

"(4) That there was no sufficient competent evidence in the record to warrant the making of the award."

We view the evidence and all reasonable inferences therefrom in the light most favorable to the factual findings of the Commission. *Worley v. Division of Employment Security*, 978 S.W.2d 480, 482[4] (Mo. App.1998). To the extent an appeal involves questions of law, we do not defer to the Commission's findings. *Searcy*, 28 S.W.3d at 894[1].

◼ Employee claims that stress from her job over a long period of time forced her to resign. Other than her own testimony, the only evidence Employee presented to support her claim was a letter from her doctor which stated Employee "was under severe stress both medically as well as with her job. My rec: would have been to focus her energys [sic] on recovery for her health." The letter was dated four and one-half months *after* she resigned. On the day Employee quit, she discovered she needed to undergo surgery for a "malignant melanoma." If a claimant quits a job and seeks unemployment compensation benefits alleging medical reasons as good cause for quitting, such claimant must ordinarily adduce expert medical evidence to prove a causal connection between the employee's work and the medical reason relied on. *Searcy*, 28 S.W.3d at 895[4]. An exception to such rule exists where the causal connection is within the common knowledge or experience of a layperson. *Id.* "[T]he cases that have addressed the issue of whether the evidence was sufficient to establish that claimed anxiety, depression, or panic attacks

2. In pertinent part, § 288.050 reads:
"[A] claimant shall be disqualified for waiting week credit or benefits until after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state equal to ten times the claimant's weekly benefit amount if the deputy finds:
"(1) That the claimant has left work voluntarily without good cause attributable to such work or to the claimant's employer...."

caused an employee to quit have required medical evidence." *Id.* at 895.

Here, the letter from Employee's doctor was produced months after Employee resigned. It provided mere conclusions that Employee suffered work-related stress. Nothing in the letter showed a foundation for the doctor's opinion or diagnosis, i.e., the doctor's report was devoid of any history given him by Employee regarding work conditions. There was no evidence the doctor had training or experience as a mental health professional. Moreover, Employee admitted that, as late as June 2000, her doctor had not diagnosed her as "depressed," nor had he prescribed medication for depression. In summary, this letter simply was not sufficient competent and substantial medical evidence to show the necessary relationship between the conditions of employment and the medical reasons for unemployment. *Reed v. Labor and Indus. Relations Comm'n,* 664 S.W.2d 650, 653[8] (Mo. App.1984) (holding conclusory affidavit by doctor regarding alleged work-related depression and anxiety was not substantial and competent evidence); *see also Searcy,* 28 S.W.3d at 896[6]. Employee failed to meet her burden on this issue, and the Commission did not err when it denied her claim because she failed to prove her anxiety and depression were caused by her job.

Employee's claim fails for the additional reason that she cannot show good cause for quitting her job as required by the statute. "The standard as to what constitutes good cause is the standard of reasonableness as applied to the average man or woman, and not to the supersensitive." *Belle State Bank v. Indus. Comm'n,*

*Div. of Employment Sec.,* 547 S.W.2d 841, 846–47[5] (Mo.App.1977). The unemployment must be caused by external pressures so compelling that a reasonably prudent person would be justified in giving up employment. *Reed,* 664 S.W.2d at 652.

"To constitute good cause, the circumstances motivating an employee to voluntarily terminate employment must be real not imaginary, substantial not trifling, and reasonable not whimsical, and good faith is an essential element." *Belle State Bank,* 547 S.W.2d at 846[5]. "[T]he Employment Security Law was designed to avoid the menace of economic insecurity, not to make work pleasant for employees.... [P]etty irritations are part of everyday living and no work is conducted in an atmosphere of complete sweetness and light." *Citizens Bank of Shelbyville v. Industrial Comm'n,* 428 S.W.2d 895, 900 (Mo.App.1968).

Employee made numerous allegations in an attempt to demonstrate good cause for her voluntary resignation. Primarily, Employee's complaint was that she had been harassed by Employer on numerous occasions. Apparently, this claim stemmed from an investigation by Employer regarding the falsification of timecards by the postmaster of Macks Creek.[3] Employee refused to give a statement regarding the investigation because four to five years earlier she had made a statement in an investigation that resulted in some employees' termination. Because of this earlier statement and the results therefrom, Employee felt some members of the community blamed her for the termination of other employees. Employee was asked to turn in her keys until the investigation was complete which resulted

---

3. Employee was a postmaster replacement at this location. Her duties included working when the regular postmaster was absent.

in her missing a family function. Employee testified she was told that if she did not give a statement, then it might result in her discharge. A representative of Employer testified the investigation was based on credible information and was not targeted to harass Employee. Furthermore, Employee was never disciplined in any way regarding this matter. However, the postmaster under investigation was found to have falsified time sheets in prior years, disciplined for such behavior, and is currently being discharged.

Employee never gave a clear indication of how problems such as these affected her work environment other than to say she "couldn't take it no more." Whatever Employee's complaints were in this regard, we find her claims of "harassment" in no way constituted good cause as contemplated by § 288.050. This is confirmed by the fact that she worked for Employer for 15 years and was asked twice to provide statements. She testified she never asked for a transfer or a change in her work environment. Also, Employee stated she "loved" her job and "enjoyed" working there and among the people for whom she worked. On these facts, no reasonably prudent person would be justified in seeking unemployment for the reasons stated above.

Employee made further complaints in order to demonstrate good cause. For instance, she alleged a carrier asked her to sign a leave slip and when she refused, she received a call from a supervisor who "chewed on [her] for about ten or 15 minutes." Apparently, the carrier used an office phone which was not allowed. At best, this can be described as a "petty irritation" which is a part of any job. *See, e.g., Citizens Bank,* 428 S.W.2d at 900; *Backer's Potato Chip Co. v. Labor and Indus. Relations Comm'n.,* 679 S.W.2d 909, 911–13 (Mo.App.1984) (holding abu-sive and profane language by supervisor insufficient to show good cause).

Other complaints voiced by Employee were the changing policies of Employer and differing supervisors. These resulted in two incidents where Employee received a "cussing" from customers. However, Employer informed her she did not have to undergo such abuse and to close her window if it ever occurred again. This was a reasonable resolution to the problem, and two incidents in 15 years did not qualify as good cause. Further complaints by Employee included issues regarding her job duties. Employee lived twenty miles from the post office and was required to drive to work several times, but required to stay only a short amount of time. Also, she was called at "all hours" for work-related matters. However, the evidence indicates these were requirements of her job. Employee knew the requirements of her employment as a postmaster *replacement* when she accepted the job, and she will not now be heard to complain of such requirements. *See Mitchell v. Div. of Employment Sec.,* 922 S.W.2d 425, 428–29 (Mo.App.1996).

Various other complaints were espoused by Employee such as a computer problem and a co-employee referring to her once as "the wicked witch from the east, west, north, or south." Computer problems are part of everyday life in the age of enlightenment in which we live. This is nothing more than a "trifling" circumstance that no reasonable person would consider as a good cause basis for choosing unemployment. *See Belle State Bank,* 547 S.W.2d at 846–47. As to the "Wizard of Oz" moniker contrived by her co-employee, this type of behavior, although childish, does not rise to the level associated with good cause. *See, e.g., Springfield Grocer Co.,*

*Inc. v. Sartin,* 49 S.W.3d 817, 821 (Mo. App.2001); *Backer's Potato Chip Co.,* 679 S.W.2d at 911–13.

Employee has failed to demonstrate any causal connection between her employment and her alleged medical illness resulting in her voluntary resignation. Further, she cannot show any basis constituting good cause for her desire to become unemployed. For the foregoing reasons, Employee's point is denied.

The decision of the Commission is affirmed.

MONTGOMERY, J., concurs.

BARNEY, C.J., concurs.