# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 12, 2011                     Decided July 22, 2011

No. 10-5204

OTAY MESA PROPERTY, L.P., ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF THE INTERIOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cv-00383)

*Roger J. Marzulla* argued the cause for appellants. With him on the briefs was *Nancie G. Marzulla*.

*M. Reed Hopper* and *Damien M. Schiff* were on the brief for *amicus curiae* Pacific Legal Foundation in support of appellants.

*Maggie B. Smith*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Ellen J. Durkee* and *Meredith Flax*, Attorneys. *Kathryn E. Kovacs*, Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney, entered appearances.

*William J. Snape*, *III*, argued the cause for intervenor Center for Biological Diversity. With him on the brief was *Jonathan C. Evans*.

Before: ROGERS, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH.

KAVANAUGH, *Circuit Judge*: This case concerns the San Diego fairy shrimp, an aquatic animal found in southern California. The San Diego fairy shrimp is the size of an ant and has a life span of about 30 days. In 1997, the Fish and Wildlife Service listed the San Diego fairy shrimp as an endangered species under the Endangered Species Act. That Act authorizes the Fish and Wildlife Service to designate property as "critical habitat" for the endangered species if the property was "occupied" by the species when the species was listed as endangered (and if certain other requirements are met).

Plaintiffs are companies that own land along the California-Mexico border. In 2007, acting pursuant to the Endangered Species Act, the Fish and Wildlife Service designated 143 acres of plaintiffs' property as critical habitat for the San Diego fairy shrimp. The Fish and Wildlife Service based that critical habitat designation on a single 2001 sighting of four ant-sized San Diego fairy shrimp on the 143 acres of plaintiffs' property. The four San Diego fairy shrimp were observed in a tire rut on a dirt road on plaintiffs' property. Because the Fish and Wildlife Service has not reasonably explained how that one, isolated observation demonstrates that plaintiffs' property was "occupied" by the San Diego fairy shrimp in 1997 (the relevant statutory date),

we reverse the judgment of the District Court and remand. On remand, the District Court should vacate the designation of plaintiffs' property as critical habitat for the San Diego fairy shrimp and remand the matter to the agency.

I

The landmark Endangered Species Act of 1973 authorizes the Department of the Interior to take measures to protect species at risk of extinction. The Fish and Wildlife Service, an agency within the Department, implements this important Act, as do other agencies. The Fish and Wildlife Service may list species at risk of extinction as "threatened" or "endangered." 16 U.S.C. § 1533. Once a species is so designated, it may be unlawful for anyone to "take" (i.e., kill) members of that species. *Id.* § 1538(a)(1)(B).

In addition, the Fish and Wildlife Service may designate land, including private property, as "critical habitat" for a threatened or endangered species. The Act states:

> The term "critical habitat" for a threatened or endangered species means—
> (i) the specific areas within the geographical area *occupied by* the species, *at the time it is listed* [as a threatened or endangered species], on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and
> (ii) specific areas outside the geographical area occupied by the species at the time it is listed [as a threatened or endangered species], upon a determination by the Secretary that such areas are essential for the conservation of the species.

16 U.S.C. § 1532(5)(A) (emphases added).

Designation of private property as critical habitat can impose significant costs on landowners because federal agencies may not authorize, fund, or carry out actions that are likely to "result in the destruction or adverse modification" of critical habitat. *Id.* § 1536(a)(2).

Plaintiffs Otay Mesa Property, L.P., Rancho Vista Del Mar, and Otay International, LLC, own property along the California-Mexico border. In 2007, the Fish and Wildlife Service designated 143 acres of plaintiffs' property as critical habitat for the San Diego fairy shrimp.

San Diego fairy shrimp are tiny aquatic animals – about the size of ants. They live in "vernal pools" in southern California and northwestern Mexico. Those pools are typically large puddles or small seasonal ponds that form during the winter and then dry out as summer approaches. The life span of San Diego fairy shrimp is only about 30 days. If the shrimp lay eggs, those eggs can lie dormant in the bottom of a dry pool for months or years. When the pool re-fills again, the eggs can hatch.

In 1997, the Fish and Wildlife Service listed San Diego fairy shrimp as an endangered species. 62 Fed. Reg. 4925 (Feb. 3, 1997). But the Service did not designate plaintiffs' property as critical habitat at that time. In 2001, an environmental consulting company surveyed a 3300-acre area along the California-Mexico border, searching for fairy shrimp. The surveyed area included plaintiffs' property. The company conducted eight surveys between January and May 2001, when vernal pools are normally full and San Diego fairy shrimp can be found. Those eight surveys produced one confirmed observation of San Diego fairy shrimp on

plaintiffs' property:  On February 7, 2001, surveyors observed four adult San Diego fairy shrimp in a tire rut on a dirt road.

The Fish and Wildlife Service became aware of this report and, in 2003, included plaintiffs' property in its proposed critical habitat designation for San Diego fairy shrimp.  During the ensuing notice and comment period, plaintiffs submitted letters objecting to the designation of their property.  The Fish and Wildlife Service rejected those comments and in 2007 published a final rule designating as critical habitat 391 acres of southeast Otay Mesa, including plaintiffs' property, on the justification that the area was "occupied by the [San Diego fairy shrimp] at the time of listing [as an endangered species in 1997]," and that "the species continues to occur" in the designated area.  72 Fed. Reg. 70,648, 70,674 (Dec. 12, 2007).

In 2008, plaintiffs sued to challenge the designation of their property as critical habitat.  The District Court granted summary judgment to the Fish and Wildlife Service, although the court described the Fish and Wildlife Service's support for its conclusion as "distinctly thin."  *Otay Mesa Property L.P. v. Dep't of Interior*, 714 F. Supp. 2d 73, 75 (D.D.C. 2010).  We review the District Court's decision de novo.  *See Hendricks v. Geithner*, 568 F.3d 1008, 1011 (D.C. Cir. 2009).  We review the Fish and Wildlife Service's underlying decision pursuant to the standards set forth in the Administrative Procedure Act.  *See* 5 U.S.C. § 706.  The question here is whether substantial evidence supports the Fish and Wildlife Service's determination that plaintiffs' land was occupied by the San Diego fairy shrimp at the time of listing in 1997.  Substantial evidence is a deferential standard.  But deference is not abdication.  This case illustrates the significance of that distinction.

6

II

According to the Fish and Wildlife Service, plaintiffs' property meets the statutory definition of critical habitat because the property was "occupied" by the San Diego fairy shrimp in 1997 – the year the San Diego fairy shrimp was listed as an endangered species. 16 U.S.C. § 1532(5)(A)(i).

Several factors taken together point to a lack of substantial evidence for the Fish and Wildlife Service's determination that plaintiffs' property was "occupied" by the San Diego fairy shrimp in 1997.

*First*, surveyors identified San Diego fairy shrimp on plaintiffs' property only in one location. On February 7, 2001, surveyors found four San Diego fairy shrimp in a tire rut on a dirt road on plaintiffs' land. That is the sole confirmed observation of San Diego fairy shrimp on plaintiffs' property.

*Second*, after the one survey that found San Diego fairy shrimp on plaintiffs' property, surveyors searched plaintiffs' property six more times in 2001 for San Diego fairy shrimp. Having once found San Diego fairy shrimp, it might have been thought that surveyors would again find San Diego fairy shrimp on plaintiffs' property. That did not happen. The failure to observe *any* San Diego fairy shrimp in later surveys of plaintiffs' property is in tension with the suggestion that the property was occupied by the San Diego fairy shrimp in 2001. It is likewise in tension with the agency's conclusion that the property was occupied in 1997 and the "species continue[d] to

occur" in 2007. 72 Fed. Reg. 70,648, 70,674 (Dec. 12, 2007).[1]

On appeal to this Court, the Fish and Wildlife Service explains that San Diego fairy shrimp may live for only 30 days, but they can leave behind buried eggs that do not hatch for months or even years. *See* 62 Fed. Reg. 4925, 4926 (Feb. 3, 1997). It appears that the Service might believe (i) that wherever adult San Diego fairy shrimp are observed, one can assume that the shrimp have left behind eggs and (ii) that a property with dormant, buried eggs is by definition "occupied" by the San Diego fairy shrimp. But if that's the theory behind the Fish and Wildlife Service's determination that plaintiffs' property is occupied by San Diego fairy shrimp, the theory cannot be found in the final rule. This Court of course "may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

*Third,* the lone sighting in this case was in 2001, but the relevant date for purposes of the designation is 1997. Critical

---

[1] To buttress the single confirmed sighting of San Diego fairy shrimp on plaintiffs' land, the Fish and Wildlife Service cites a separate January 23, 2001, observation of an unidentified species of fairy shrimp in a small pond located next to the tire rut on the dirt road. The larvae were identified as being of the same genus as San Diego fairy shrimp, but they were only presumed to be of the same species because of the pond's proximity to the tire rut. On appeal, the Service maintains that this presumption was reasonable because San Diego fairy shrimp are the only species of the relevant genus known to be in the area. But that explanation appears neither in the report recording the surveyors' presumption nor in the final rule. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

habitat includes "specific areas within the geographical area occupied by the species, *at the time it is listed.*" 16 U.S.C. § 1532(5)(A) (emphasis added). The San Diego fairy shrimp was listed as an endangered species in 1997. But the Service has provided no evidence of sightings on plaintiffs' land in 1997. Although the Service has tried to explain why a single sighting in 2001 means that the San Diego fairy shrimp occupied plaintiffs' property as of 1997, that reasoning is at best strained. *See* 72 Fed. Reg. at 70,666. For their part, plaintiffs believe that the San Diego fairy shrimp may have been brought onto plaintiffs' property after 1997 by a truck tire.[2]

Separately, the Fish and Wildlife Service suggests that plaintiffs' property is part of a "vernal pool complex" that supports the San Diego fairy shrimp population in the general area. At oral argument, counsel for the Fish and Wildlife Service stated that maps in the record show a stream running from plaintiffs' property to a pool not on plaintiffs' land where San Diego fairy shrimp have been observed (albeit, again, only one time).

But the potential existence of San Diego fairy shrimp *outside* plaintiffs' property does not itself show that San Diego fairy shrimp occupy plaintiffs' property, and

---

[2] Indeed, the one pool – basically a puddle in a tire rut on a dirt road – in which the shrimp were observed in 2001 may not have even existed in 1997. At oral argument, plaintiffs' counsel explained that "these roads are regularly maintained and graded each year so that the border patrol can use them daily to . . . get aliens crossing the border, and there are literally hundreds of aliens coming across this property daily, [and] that sometime between 1997 and 2001, this rut was created." Tr. of Oral Arg. at 20. On remand to the Fish and Wildlife Service, if plaintiffs raise this argument, the Service will need to address it.

occupation of plaintiffs' property was the rationale supplied in the agency's final rule.  To be sure, the Endangered Species Act allows designation of critical habitat both for land occupied by the species in question and for "specific areas outside the geographical area occupied by the species . . . upon a determination by the Secretary that such areas are essential for the conservation of the species."   16 U.S.C. § 1532(5)(A)(ii).   But the Fish and Wildlife Service here designated plaintiffs' land as critical habitat on the basis that it was *occupied*, not on the basis that it was a "specific area[] outside the geographical area occupied by the species . . . essential for the conservation of the species."  *See, e.g.*, 72 Fed. Reg. at 70,664 ("All areas designated as critical habitat for San Diego fairy shrimp are occupied . . . .").  If the Fish and Wildlife Service believes that plaintiffs' land is critical habitat not because it is occupied, but rather because it is "essential for the conservation of the species," then it must say so in its agency decision and justify that determination. *See SEC v. Chenery Corp.*, 318 U.S. 80, 88 (1943).

The Fish and Wildlife Service also contends that the evidence here suffices because the Endangered Species Act requires the Fish and Wildlife Service to make critical habitat designations "on the basis of the best scientific data available."  16 U.S.C. § 1533(b)(2).  The Fish and Wildlife Service argues, correctly, that it has no affirmative obligation to conduct its own research to supplement existing data. *See Am. Wildlands v. Kempthorne*, 530 F.3d 991, 1001 (D.C. Cir. 2008).  But the absence of a requirement for the Service to collect more data on its own is not the same as an authorization to act without data to support its conclusions, even acknowledging the deference due to agency expertise.

Here, the Fish and Wildlife Service relies on eight surveys of plaintiffs' property.  Seven of those surveys found

no confirmed San Diego fairy shrimp on the property. One survey in 2001 resulted in identification of the species' presence in one location. The "best scientific data available" fails to demonstrate, without further explanation, that plaintiffs' property was "occupied" by San Diego fairy shrimp in 1997.

We emphasize that it is the combination of all the above factors that leads us to vacate the Fish and Wildlife Service's designation of plaintiffs' property. We rely on no single factor alone. On remand, moreover, the Fish and Wildlife Service may be able to justify a re-designation. Our conclusion in this case is thus quite narrow: The current record is simply too thin to justify the action the Service took.

\* \* \*

We reverse the District Court's grant of summary judgment to the Fish and Wildlife Service. The District Court is directed to vacate the Fish and Wildlife Service's decision designating plaintiffs' property as critical habitat for the San Diego fairy shrimp and to remand the matter to the agency.

*So ordered.*