ALOK AHUJA, Judge.
The Labor and Industrial Relations Commission concluded that a workplace accident in which Tammy Moore-Ransdell squatted and twisted to reach into a low, over-filled filing cabinet drawer was the prevailing factor causing her permanent partial disability. Because I believe this conclusion is unsupported by sufficient competent evidence in the record considered as a whole, I respectfully dissent from affirmance of the Commission’s final award.
As the majority explains, when competing medical causation testimony is presented, it is the Commission’s prerogative to choose which testimony to believe. See, e.g., Bond v. Site Line Surveying, 322 S.W.3d 165, 171 (Mo.App.W.D.2010). In this case, the Commission found that the testimony of Moore-Ransdell’s treating orthopedic surgeon, Dr. Thomas Highland, was the most credible concerning the cause of her disability. And Dr. Highland testified, to a reasonable degree of medical certainty, that the February 26, 2008 workplace incident was “the prevailing cause” and “primary factor” which produced the medical condition which rendered her permanently partially disabled.
The majority’s analysis of the causation issue essentially ends here. And normally, I would tend to agree that, if a medical *711 expert has testified that a workplace accident was the prevailing factor causing a disability, and the Commission indicates that it believes that testimony, we are required to defer to the Commission’s credibility determination, and affirm.
But our review function is not limited simply to determining whether any evidence in the record supports the Commission’s decision. Instead, Article Y, § 18 of the Missouri Constitution requires us to decide whether the Commission’s decision is “supported by competent and substantial evidence upon the whole record.” (Emphasis added.) The Missouri Supreme Court has explained that, under the constitutional standard, “[w]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.” Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 228 (Mo. banc 2003). “A reviewing court considers whether the Commission ‘could have reasonably made its findings, and reached its result, upon consideration of all the evidence before it.’” Hornbeck v. Spectra Painting, Inc., 370 S.W.3d 624, 629 (Mo. banc 2012) (quoting Wood v. Wagner Elec. Corp., 355 Mo. 670, 197 S.W.2d 647, 649 (1946)). Importantly, in conducting our review we do not view the evidence in a light most favorable to the Commission’s decision. Hampton, 121 S.W.3d at 223 (overruling decades of contrary precedent on this point).
In this case, the rule that we must consider the whole record dovetails with a second well-established rule: “[t]he ultimate importance of the expert testimony is to be determined from the testimony as a whole.” McGrath v. Satellite Sprinkler Sys., Inc., 877 S.W.2d 704, 708 (Mo.App.E.D.1994) (overruled on other grounds by Hampton, 121 S.W.3d 220).[1] In addition, an expert’s expression of an ultimate conclusion, standing alone, does not constitute substantial competent evidence to support an administrative decision; instead, the expert must provide specifics explaining how and why his or her opinions apply to a particular case.[2]
Therefore, the fact that Dr. Highland may have “said the magic words,” by expressing an ultimate causation opinion which parroted the statutory standard, does not end our inquiry. We must look beyond Dr. Highland’s statement of his ultimate conclusions.
The issue here is not one of choosing between competing medical theories — the Commission has already done that. The issue, instead, is determining what Dr. Highland’s testimony means, when considered in the context of that testimony as a whole.
Looking beyond the conelusory statements on which the majority relies, the remainder of Dr. Highland’s testimony, and his medical records, establish that Randolph County is not liable for Moore- *712 Ransdell’s permanent disability. Instead, Dr. Highland’s testimony establishes that the February 2008 work accident merely triggered Moore-Ransdell’s preexisting degenerative disc disease to become symptomatic, and that it was this preexisting degenerative condition — not the workplace incident — which caused her permanent partial disability.
Dr. Highland testified that, before the work accident, Moore-Ransdell had degenerative disc disease, which is a condition that progresses over time due to aging and normal activities. The progression of Moore-Ransdell’s condition may also have been exacerbated by her thirty-seven-year smoking habit. Dr. Highland testified that people with degenerative disc disease like Moore-Ransdell can experience pain, and even the need for surgery, spontaneously and without any work-related accident.
Dr. Highland testified that the February 2008 work accident caused Moore-Rans-dell to suffer a lumbar strain. He explained that this lumbar strain was an “injury to the muscles and ligaments, which is usually a more ... short-term issue.” Dr. Highland did not find, and the MRIs did not indicate, that the work accident caused Moore-Ransdell to suffer a “fracture or anything acute like that.”
As opposed to the “short-term issue” presented by the lumbar strain, Dr. Highland testified that “the continued pain” that Moore-Ransdell experienced “was from the deteriorating discs that she had.” Dr. Highland stated that it was this continuing pain from Moore-Ransdell’s underlying degenerative disc condition that he treated; in particular, he testified that “that the primary problem that the [three-level fusion] surgery addressed was the underlying degenerative condition of the back that had just become symptom[at]ic.”
Importantly, Dr. Highland testified that the February 2008 incident did not cause Moore-Ransdell’s degenerative disc condition to become worse. Instead, he stated unequivocally that the workplace accident “didn’t advance the degeneration of the spine. It just caused the degeneration to become symptomatic.” In other words, the workplace accident merely “triggered a pain from the underlying discs.” Dr. Highland agreed “that any similar incident, even a minor one outside of work, could have just as easily triggered some kind of pain mechanism” in Moore-Rans-dell’s back.
Dr. Highland’s medical records are consistent with his deposition testimony. Thus, Dr. Highland’s notes on his initial visit with Moore-Ransdell in May 2008 identify disc degeneration and stenosis as the source of her complaints:
I reviewed her x-rays she brought with her ... Her lumbar spine shows three-level degenerative disease at L3-4, 4-5 and 5-1, but she has some bulging of the 4-5 disc and it is causing some sten-osis. There is some facet hypertrophy probably contributing, but there is some stenosis at 4-5. I think this is where her problem is coming from.
Dr. Highland did not see Moore-Rans-dell for approximately two years from August 2008 until August 2010. His notes from her August 30, 2010 visit state the following as his entire “Impression” of her condition: “Severe degenerative disc disease L5-S1 with mild degenerative disc disease at L3-L4 and L4-L5.”
Following her August 2010 visit, an MRI was taken of Moore-Ransdell’s lumbar spine. Based on the MRI results, Dr. Highland’s told her that she required a three-level spinal fusion to treat the significant disc degeneration from which she suffered. His notes state:
I talked to Tammy Ransdell about her MRI scan. It does show further degeneration at L3-L4 and L4 — L5 with some inflammatory changes at L5-S1. She has increasing bulging of the L3-L4 disc *713 with some nerve root compression at that level.
I told her I thought she needed to treat this with an anterior fusion and we should possibly consider a laminotomy at L3-L4 and L4-L5, but I thought her primary surgery needed to be an anteri- or fusion at those three levels.
Finally, in a letter to Moore-Ransdell’s counsel in October 2010, Dr. Highland again stated that her degenerative disc condition was the cause of her continuing pain:
[Moore-Ransdell] came back to see me in August 2010 because of persistent pain in her back and increasing pain and numbness and weakness in the left leg. I re-evaluated her including x-rays and an MRI scan. She has continuing degeneration of all three segments and increasing stenosis. She has continuing degeneration of all three segments in her back which were the source of her pain. When I saw her in 2008 it included L3-4, L4-5 and L5-S1.
(Emphasis added.)[3]
Reviewing Dr. Highland’s testimony and clinical notes in their entirety establishes that, while the February 2008 incident may have triggered continuing pain from Moore-Ransdell’s degenerative disc condition, it is the degenerative condition — not the February 2008 incident — which is the prevailing factor causing Moore-Ransdell’s ongoing disability. In these circumstances, the Commission’s final award must be reversed. As amended in 2005, § 287.020.3(1)[4] requires that, to be com-pensable, a workplace accident must be “the prevailing factor in causing both the resulting medical condition and disability,” meaning that the work accident is the “primary factor, in relation to any other factor, causing both the resulting medical condition and disability.” The statute makes emphatically clear that “[a]n injury is not compensable because work was a triggering or precipitating factor.” § 287.020.2. It also specifies that “[o]rdinary, gradual deterioration, or progressive degeneration of the body caused by aging or by the normal activities of day-to-day living shall not be compensable.” §§ 287.067.2, .3. Under the 2005 amendments to the Worker’s Compensation Law, “[i]t is not sufficient that the [work-related] event simply aggravates a preexisting condition.” Johnson v. Indiana W. Express, Inc., 281 S.W.3d 885, 892-93 (Mo.App.S.D.2009) (citing Gordon v. City of Ellisville, 268 S.W.3d 454, 459 (Mo.App.E.D.2008)).
Fairly read in its entirety, Dr. Highland’s testimony shows only that the February 2008 workplace incident triggered symptoms from Moore-Ransdell’s pre-ex-isting degenerative disc condition. The prevailing factor causing the continuing *714 pain, surgical treatment, and permanent disability is Moore-Ransdell’s pre-existing degenerative disc condition, not the lumbar strain caused by the February 2008 accident.[5] While our standard of review is deferential, “deference does not imply abandonment or abdication of judicial review.” Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).[6] We should reverse the Commission’s final award.

. Quoted in Thorsen v. Sachs Elec. Co., 52 S.W.3d 611, 619 (Mo.App.W.D.2001) (overruled on other grounds by Hampton, 121 S.W.3d 220); see also, e.g., Hinrichs v. Young, 403 S.W.2d 642, 646 (Mo.1966); Morales v. State, 323 S.W.3d 466, 471 (Mo.App.E.D.2010) ("In determining whether the expert’s opinion is rendered with the required degree of certainty, the court should look at the testimony as a whole.”); State v. Granberry, 530 S.W.2d 714, 729-30 (Mo.App.1975).

. See generally Smith v. U.S. Postal Serv., 69 S.W.3d 926, 929 (Mo.App.S.D.2002) (holding that, where medical evidence is required to establish causation, a doctor’s conelusory opinion, without more, does not constitute substantial and competent evidence); Kansas City Power & Light Co. v. Searcy, 28 S.W.3d 891, 896 (Mo.App.W.D.2000) (rejecting doctor’s opinion that particular work assignment would cause employee to experience "stress related panic attacks,” where letter "simply concludes, without providing any specifics,” that this would result); Reed v. Labor & Indus. Relations Comm’n, 664 S.W.2d 650, 653 (Mo.App.S.D.1984).

. In his October 2010 letter, and in a subsequent letter to counsel in January 2012, Dr. Highland stated that the "[i]nternal disc disruption to L3-4, L4-5 and L5-S1” which Moore-Ransdell was experiencing was "secondary to work injury in February 2008,” and that her need for surgery was directly related to the February 2008 incident. Dr. Highland also testified on direct examination during his deposition that the workplace incident "caused” the condition which he treated with surgery. These statements support the conclusion that the February 2008 workplace accident was a "but for” cause of Moore-Ransdell’s degenerative disc condition becoming symptomatic when it did. But this sort of "but for” causation is not sufficient to establish compensability under the "prevailing factor” standard. See, e.g., Mo. Alliance for Retired Ams. v. Dep’t of Labor & Indus. Relations, 277 S.W.3d 670, 684-85 (Mo. banc 2009) (Teitelman, J., dissenting) ("prevailing factor” causation standard of § 287.030.3(1) exceeds proximate causation standard applicable in common-law tort cases).

. Statutory citations refer to the 2000 edition of the Revised Statutes of Missouri, as supplemented through the 2013 Cumulative Supplement.

. In her briefing, Moore-Ransdell suggests that the issue here is not whether the workplace accident was the "prevailing factor” causing a compensable injury, but instead whether particular medical treatments were necessary to cure or relieve the effects of the compensable injury she undeniably suffered (namely, the lumbar strain). Moore-Ransdell cites Hornbeck v. Spectra Painting Inc., 370 S.W.3d 624, 633-36 (Mo. banc 2012), and Tillotson v. St. Joseph Medical Center, 347 S.W.3d 511, 517-21 (Mo.App.W.D.2011), to support her argument. It is clear from the record, however, that the Commission's disability determination is based on the continuing pain Moore-Ransdell suffers as a result of what Dr. Highland testified was a degenerative disc condition. Moreover, as explained in the text, Dr. Highland’s testimony establishes that the medical treatment he provided to Moore-Ransdell related solely to the degenerative disc condition, not to the "short-term” lumbar strain which may have triggered her degenerative condition. All of the medical expenses for which Moore-Ransdell sought to recover were for dates of service in October 2010 or thereafter, more than 2 ½ years after the filing-cabinet incident.

. See also Otay Mesa Prop., L.P. v. United States Dep’t of Interior, 646 F.3d 914, 916 (D.C.Cir.2011): "Substantial evidence is a deferential standard. But deference is not abdication. This case illustrates the significance of that distinction.”