James Edward Welsh, Judge
James R. Martin appeals from the Labor and Industrial Relations Commission’s determination that he is ineligible for unemployment benefits because he voluntarily quit'his employment with Swift Transportation of Arizona without good cause attributable to his work or his employer. Martin contends that the record estab *416 lishes that he had good cause for quitting his job and that the factual findings of the Commission are not supported by substantial and competent evidence. He also asserts that the Commission erred in denying unemployment compensation to him on the basis that he failed to provide expert testimony establishing that his headaches and eye sti'ain were the result of the LED lights installed at his workplace. We affirm.
Martin worked for Swift Transportation as a diesel mechanic for approximately ten years. On July 13, 2013, Martin submitted his letter of resignation. In his letter of resignation, Martin stated that his decision to resign was “a direct result of the new extreme lighting recently installed in the shop work area.” According to Martin, “the intense lighting causefd him] to have headaches, overall eye fatigue, and adversely affect[ed his] driving at night.” Martin’s last day of work was July 27, 2013.
On July 31, 2013, Martin applied for unemployment benefits. On August 23, 2013, a deputy for the Missouri Division of Employment Security determined that Martin was disqualified from receiving unemployment benefits because he voluntarily quit his employment because he did not “take his concerns regarding the lighting to the highest authority prior to quitting.” Martin appealed this determination to the division’s appeals tribunal, and the appeals tribunal held a hearing.
The evidence at the hearing established that in mid-April, 2013, Swift Transportation had a new LED lighting system installed in the shop where Martin worked as a diesel mechanic. On April 19, 2013, Martin spoke to his immediate supervisor, Troy Binder, about the lights being too bright. On April 20, 2013, Martin told Binder that the lights were “just blinding” and were like looking into the sun. According to Martin, he began suffering from headaches and eye strain after Swift Transportation installed the new lighting system. On April 22, 2013, Binder issued Martin and another employee shaded safety glasses to wear while working under the lights. Before leaving work on April 22, Martin left Binder a note that said:
These sun shades don’t fit over my eye glasses properly — they rub my glass' lens. Ear pieces also sit on top of my ears.
I am only asking for a reasonable accommodation with the extremely bright lights that we encounter here at night.
I don’t feel issuing sun shades is the only solution.
If this is.all you can do, please call me.
On April 23, 2013, Martin took FMLA leave to be with his sick mother in Texas. While in Texas, Martin telephoned Binder, and Binder told him that he was working on the lighting issue. Martin did not return to work until July 8, 2013. Upon his return to work, Binder told him that there was not anything he could do about the lights. Binder said that he had talked to the lighting engineers and that the engineers said that the lighting was adequate for “low bay lighting” and was “in spec.” Martin suggested that Binder install one more wire to the switch box, which would allow half of the lights to be turned off. Binder told Martin that he did not know anything about the lights and did not know whether or not that could be done. Binder took no further action.
According to Martin, because his headaches and eye fatigue continued and because Swift Transportation made no changes to the lighting system, Martin tendered his two week notice on July 16, 2013, saying that he intended to resign. Martin did not submit any medical docu *417 mentation to Swift Transportation. Martin’s last day of work was July 27, 2013.
Martin admitted at the hearing that he had vision insurance and that he did not see an eye doctor about his eye issues and headaches. He also acknowledged that he never contacted OSHA about the lighting situation at Swift Transportation and never engaged a lighting specialist to determine if there was a problem with the lighting system. Martin said that he did not take his complaints beyond his immediate supervisor because he was always told to take his problems directly to his supervisor.
The appeals tribunal affirmed the deputy’s decision. The appeals tribunal found that Martin was disqualified from receiving unemployment benefits because he “voluntarily left without an adequate good faith effort to resolve all concerns” and because “no expert evidence showed any medical issue existed and was connected to work.” The appeals tribunal concluded that Martin did not meet his burden “to prove good cause to voluntarily leave attributable to the work or employer.” Martin appealed this decision to the Commission. The Commission affirmed the appeals tribunal’s decision and adopted the appeals tribunal’s decision as its own. Martin appeals from the Commission’s decision.
Appellate review of the Commission’s decision in employment security matters is governed by section 288.210, RSMo 2000. We may modify, reverse, remand for rehearing, or set aside the Commission’s decision on only these grounds: “(1) the Commission acted without or in excess of its power; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient, competent evidence in the record to warrant the making of the award.” Lewis v. Fort Zumwalt Sch. Dist, 260 S.W.3d 888, 889-90 (MoA.pp.2008) (citing § 288.210).
Martin contends that the record establishes that he had good cause for quitting his job and that the factual findings of the Commission are not supported by substantial and competent evidence. He also asserts that the Commission erred in denying unemployment compensation to him on the basis that he failed to provide expert testimony establishing that his headaches and eye strain were the result of the LED lights installed at his workplace.
Section 288.050.1(1), RSMo Cum. Supp.2013, requires that, for an employee who has quit his job to qualify for unemployment compensation, his quitting must have been for good cause attributable to .his work or his employer. “We construe this provision strictly and narrowly in favor of finding that an employee is entitled to compensation.” Baby-Tenda Corp. v. Hedrick, 50 S.W.3d 369, 374 (Mo.App.2001). Determining whether an employee has good cause to leave his employment is a question of law, and we do not defer to the commission’s determination on issues of law. Id.
As the claimant, Martin had the burden of proving good cause. Drake v. Lengel, 403 S.W.3d 688, 690 (Mo.App.2013). “ ‘Good cause’ for purposes of determining eligibility for unemployment benefits has no fixed or precise meaning, and is judged by the facts of each case.” Quik ’N Tasty Foods, Inc. v. Div. of Emp’t Sec., 17 S.W.3d 620, 626 (Mo.App.2000). “ ‘[T]he circumstances motivating an employee to voluntarily terminate employment must be real, not imaginary, substantial, not trifling, and reasonable, not whimsical[.]’ ” Hessler v. Labor & Indus. Relations Comm’n, 851 S.W.2d 516, 518 (Mo. banc 1993) (citation omitted). “Good cause for voluntary unem *418 ployment is ‘limited to instances where the unemployment is caused by external pressures so compelling that a reasonably prudent person would be justified in giving up employment.’ ” Reed v. Labor and Indus. Relations Comm’n of Missouri, 664 S.W.2d 650, 652 (Mo.App.1984). “It is an objective measure based on what an average person would do acting reasonably and in good faith.” Mauller v. Div. of Emp’t Sec., 331 S.W.3d 714, 718 (Mo.App.2011). “With respect to the ‘reasonableness’ element, a claimant must demonstrate that the circumstances of the claimant’s employment would cause a reasonable person to terminate the employment rather than continue working.” Knobbe v. Artco Casket Co., Inc., 315 S.W.3d 735, 740 (Mo.App.2010). “The ‘good faith’ element requires the employee to ‘prove an effort was made to resolve the dispute before resorting to the drastic remedy of quitting his or her job.’” Drake, 403 S.W.3d at 691.
According to Martin, the lighting at his job caused him to suffer headaches and eye strain. He claims that this constituted good cause to quit his job. “Ordinarily, ‘[i]f a claimant quits a job and seeks unemployment compensation benefits alleging medical reasons as good cause for quitting, such claimant must adduce expert medical evidence to prove a causal connection between the employee’s work and the medical reason relied on.’ ” Mena v. Cosentino Group, Inc., 233 S.W.3d 800, 804 (Mo.App.2007) (quoting Smith v. U.S. Postal Serv., 69 S.W.3d 926, 928 (Mo.App.2002)). “ ‘An exception to this rule exists where the causal connection is within the common knowledge or experience of a layperson.’ ” Mena, 233 S.W.3d at 804 (quoting Smith, 69 S.W.3d at 928).
Martin argues that cases requiring medical testimony are only applicable to cases involving mental or emotional injuries and workplace aggravation injuries and are not applicable to cases involving workplace injuries. See Clevenger v. Labor & Indus. Relations Comm’n, 600 S.W.2d 675, 676 (Mo.App.1980) (claimant for unemployment benefits did not meet her burden of proof because she failed to produce competent medical evidence establishing a cause and effect relationship between her work and her complained of emotional and mental condition); Mena, 233 S.W.3d at 804 (claimant for unemployment benefits did not meet her burden of proof because she failed to produce evidence of medical causation linking the aggravation of her arthritis to her work); Diversified Asphalt, Inc. v. Labor and Indus. Relations Comm’n of Mo., 622 S.W.2d 716, 719 (Mo.App.1981) (claimant for unemployment benefits, who suffered from arthritis which she claimed was caused or aggravated by working conditions, did not meet her burden of proof because she failed to produce medical evidence establishing the cause and effect relationship between the complained-of condition and the asserted cause). We, however, find no such distinction. We fail to see how the need for medical testimony for a claim involving a workplace injury is any different from a claim involving mental or emotional injuries or a claim involving workplace aggravation injuries.. If medical causation is not within the common knowledge or experience of a layperson, “medical evidence establishing the cause and effect relationship between the complained-of condition and asserted cause” is necessary. Clevenger, 600 S.W.2d at 676. Thus, to the extent that Martin contends that medical testimony is only required for mental or emotional injuries and workplace aggravation injuries, his contention is without merit.
The Commission determined that Martin failed to meet his burden of proving that he voluntarily left his employment *419 with Swift Transportation with good cause attributable to his work or his employer. In particular, the Commission concluded that Martin’s alleged symptoms of headaches and eye strain due to the lighting conditions were not within a layperson’s common knowledge or experience and that medical evidence was necessary to establish “the cause and effect relationship between the complained of condition and the asserted cause.” Clevenger, 600 S.W.2d at 676. Indeed, the record in this case merely contains Martin’s bare allegations that that the lights caused his symptoms,[1] but the record established that lighting engineers found that the lighting was adequate for “low bay lighting” and was “in spec.” Martin offered no medical evidence establishing a medical connection between the lights at his job and his headaches and eye strain.[2]
An analogous case to the causation issue in this case is Turner v. Norfolk Western Ry. Co., 785 S.W.2d 569 (Mo.App.1990).[3] In that case, a railroad employee filed an action for damages against railroad under the Federal Employers’ Liability Act asserting that the defendant failed to provide a reasonably safe place to work. Employee’s complaint was that the railroad’s roundhouse was noisy and as a result he suffered noise-induced hearing loss. On appeal, the employee complained about the jury instruction because it submitted the defendant’s constructive knowledge of the cause of the injury as an element of his claim for failure to provide safe conditions for work. Id. at 572. The court concluded: “The noise level which may produce hearing loss is not a matter of common knowledge, therefore [the employee] had the burden of proof to show that in the exercise of due care [the railroad] should have known that the noise level in the North Kansas City roundhouse could cause hearing loss to employees working there.” Id. at 571. The court stated, “Obviously some conditions which cause injury will be so apparent that it can only be said that the railroad knew or should have known of the condition. But there will be *420 conditions of work which may produce injury which cannot be said to be so apparent as to impart notice to the railroad.” Id. at 572. The court found that the central question is whether “the cause of the injury can be said to be commonly known as one that may cause the injury shown.” Id. Because the employee failed to prove the level or duration of noise which may cause injury, the court found that it was necessary to include the additional paragraph on knowledge in the jury instruction. Id. The court stated: “While it may be said that it is a matter of common knowledge that loud noise may be harmful to hearing, it cannot be said that the dBA level which may cause injury to hearing is commonly known.” Id.
In this case, we cannot say the causation of Martin’s headaches and eye strain is “within common knowledge and experience so as to dispense with the necessity for some medical evidence.” Diversified Asphalt, 622 S.W.2d at 719. “This is especially true where ... no visible signs manifest themselves.” Id.
Martin contends that, because he experienced a “sudden onset” of symptoms, causation could be inferred and expert evidence was unnecessary. In support of his contention, Martin relies on the “sudden onset doctrine.” “That doctrine holds that causation may be inferred by a lay jury, without expert evidence, where the obvious symptoms of the injury follow the trauma immediately, or with only short delay, and the injury is the kind that is normally sustained in the kind of trauma being considered.” Berten v. Pierce, 818 S.W.2d 685, 686 (Mo.App.1991). “The lay jury by its common sense and experience may reliably find that the injury occurred as a result of the trauma.” Id. This doctrine, however, typically applies in “ ‘cases where the physical disability develops coincidentally with the negligent act, such as broken bones ..., immediate, continuing back pain ..., or an obvious wound.’ ” Pruneau v. Smiljanich, 585 S.W.2d 252, 255 (Mo.App.1979) (quoting DeMoulin v. Kissir, 446 S.W.2d 162, 165 (Mo.App. 1969)). The doctrine is not applicable in this case where Martin claims that he suffers from headaches and eye strain due to lighting and not due to a physical trauma or an accident.
The Commission, therefore, did not err in finding that, because Martin failed to produce medical evidence, Martin failed to meet his burden of establishing that he had good cause for voluntarily quitting his employment with Swift Transportation.[4] In so holding, we are not saying that in every case in which a claimant quits his or her job due to a medical reason that the claimant must produce expert medical evidence establishing a causal connection between the claimant’s work and the medical reason relied on. The claimant bears the burden of proving good cause and chooses the evidence to present to make his or her case concerning good cause. But, if the causal connection between the claimant’s work and the medical reason relied on is not within the common knowledge or experience of a layperson, a claim for unemployment compensation may be denied if the claimant chooses not to produce expert medical evidence.
We affirm the Commission’s decision.[5]
*421 Tracey Mason-White, Special Judge, concurs. Alok Ahuja, Chief Judge, writes a dissent.

. Martin also complains that he was denied the opportunity to introduce testimony from his co-worker, Charles Geyer, which Martin claims would have established a causal link between the lights and his symptoms. The co-worker’s testimony, however, was properly excluded by the appeals tribunal because no expert testimony had been produced showing a link between the headaches and the lights. As noted above, because Martin's symptoms of headaches and eye strain due to the lighting conditions were not within a layperson’s common knowledge or experience, medical evidence was necessary to establish "the cause and effect relationship between the complained of condition and the asserted cause.” Clevenger, 600 S.W.2d at 676.

. Martin asserts that requiring him to retain an expert, without providing him notice that he was required to do so until after his claim was denied, violates the public policy of this state contained in section 288.020.1, RSMo 2000. That provision provides: "Economic insecurity due to unemployment is a serious menace to health, morals, and welfare of the people of this state resulting in a public calamity.” Martin had the burden to establish that he had good cause for quitting his employment. That he was not advised that he had to provide medical evidence establishing a medical connection between the lights at his job and his headaches and eye strain is not a violátion of the public policy of this state.

.But see Tufariello v. Long Island R.R. Co., 458 F.3d 80, 88 (2nd Cir.2006) (holding that expert testimony is not needed to establish causation when "there if a generally understood causal connection between physical phenomena in this case, very loud sounds, which we refer to colloquially as 'deafening' and the alleged injury [hearing loss] that ‘would be obvious to laymen.' " Tufariello, however, “is the exception and not the norm for whether expert testimony establishing specific causation is necessary for cumulative trauma disorders.” Myers v. Illinois Central R.R. Co., 629 F.3d 639, 643 (7th Cir.2010).

. Because we reach this conclusion, we need not address Martin’s remaining contentions on appeal.

. We express our appreciation to Dean Ellen Y. Suni, and student Brett M. Simon, of the Appellate Practice Clinic of the University of Missouri-Kansas City School of Law, who represented Martin in this appeal on a pro bono basis.